# SUPREME COURT OF TENNESSEE

### FOR THE

## NASHVILLE, DECEMBER TERM, 1917.

### MIDDLE DIVISION.

*(Continued from Vol. 139.).*

---

MATT WATKINS *v.* THE STATE.

## (*Nashville*. December Term, 1917.)

1. **CRIMINAL LAW.** Misconduct of prosecuting attorney. Improper argument.

   Where a prosecuting attorney in argument imputed wrongdoing or perfidy to any trial jurors should they not take his view, and asserted facts not proved, such as that an absent person was in town and could have been found by defendant, imputed dishonesty to adversary counsel, and shook his finger under the nose of accused, and addressed him in abusive terms, a conviction cannot stand. (*Post, pp.* 4-8.)

2. **CRIMINAL LAW.** Improper argument. Duty of court.

   Where prosecuting attorney starts to use grossly improper argu-

ment, the trial judge should stop him at once without waiting for exceptions. (*Post, pp.* 8-10.)

Case cited and distinguished: People v. Fielding, 158 N. Y., 542.

## FROM WILSON.

Appeal from the Circuit Court of Wilson County. —HON. JOHN E. RICHARDSON, Judge.

JOHN C. SANDERS and SETH WALKER, for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The plaintiff in error was convicted of murder of one Tom Leek (in the second degree), and has appealed to this court and assigned errors.

A reversal of the judgment must result because of the failure of the trial judge to hold the argument of the District Attorney-General 'within legitimate bounds. In that argument it was said, by way of prefatory remarks:

"I come before you with but one humble purpose in mind, and that is, to the best of the ability that I have in performing that office that the law requires of me, by a cool, deliberate, and unimpassioned debate and rehearsal of the facts to aid you in arriving

at that verdict which truth and justice expects at your hands."

And at other points the Attorney-General asseverated his purpose to discuss the issues with deliberation and fairness to the accused. All this, unfortunately, was lost sight of as the argument proceeded, and the Attorney-General said:

"Gentlemen, you are expected to be men. Have I got twelve brave men? Have I got twelve men that are sponsors of Wilson county in justice? If there are men upon this jury who were put upon it to hang it, if there are men sitting there, no matter what the truth is, regardless of evidence and of duty, who are going to sit in the jury box and stand in the way of a verdict, for God's sake rise up and let me see who you are that I may quit wasting my sweat, that I may look into his face, and with all the power within me that I may tell it is you, or you; that I may leave the eleven, ten, nine, eight, to their conscience, to their God, and that I may plead with you not to miscarry justice at the hands of a Wilson county jury, but that you stand firm for the rights of the people, the protection of the homes and of the widows of this country, that you put your foot down on murder and murderers, and that you make life more secure and safe in this land in which you live. Won't you? I am struggling by argument to touch you. Won't you tell me by some look that you are the man that intends to stand in the way of justice, if you are on this jury? God

knows I don't want a man on this jury, when I address it, except he is for right. You know the tale this man tells you—

"Mr. Walker (for the defendant): We object to that as improper to the jury.

"Mr. Faulkner (district attorney): Just so you don't take my time, it don't bother me to be interrupted.

"Mr. Walker: We have the right to except. (Overruled.)

"Mr. Faulkner: You have the right to continue to interrupt. Here is what I want, brave men who are not afraid. I stand here as the representative of the law, as the representative of the State; I have no interest, I have no sheckels in my pockets from the man that I represent charged with murder to get him out of it, but I simply stand here in justice before God and under my oath to assist you in a correct and not an incorrect decision that you bring in."

It requires neither specification nor argumentation on our part to demonstrate that there was in this a departure from that orderly administration of justice which should mark all court procedure. The attorney general standing as the spokesman of the State, has no right to impute to the trial jurors wrongdoing or perfidy should they be unable to take his view of the facts, or to seek by any sort of intimidation to compel or deflect their verdict. We confess our inability to understand the conception of the Attorney-General when he asked of that

trier of fact, who dared to dissent, to tell of it by some look—thus to mark that juror, in the esteem of the State's law officer, as one whose intention it was to stand in the way of justice.

A verdict in a criminal case is not to be striven for by him who represents the State at a need for his forensic or histrionic ability. The vindication of justice, not of advocacy, is the true concern. Still less is a verdict to be sought under conditions which may not untruly be said to take something of the color of jury hectoring.

Where language such as the above is used in addressing a jury in a criminal case, it should be understood, as we now declare, that any verdict so obtained cannot stand. The net result of the Attorney-General's effort will be a mistrial of the cause, to the added expense of the State which he represents.

It appears, further, that the District Attorney-General in the heat of advocacy addressed to the accused and his counsel at least one-fourth of his entire argument. The counsel of the defendant had asked of a witness who was testifying as to the good reputation of the deceased for peace and quietude whether it was not a part of deceased's reputation that he had made an attack of violence on one Luther Bingham. The Attorney-General argued that Bingham ought to have been subpoenaed and used as a witness. Without any proof on the point, the Attorney-General ventured the assertion that

Bingham was in town, the county site, at the time of the trial, and proceeded to say:

"You wouldn't bring Luther Bingham. Why didn't you bring him here? I would have thought they would have scoured heaven and earth to get Luther Bingham. They want to know where the bear's tracks are, but they don't want the bear. The idea of asking didn't he [deceased] play the wild with Luther Bingham, and get desperate, and abuse him, and get a crowd in order to intimidate him and say he was a coward, and Luther Bingham right here in the county, and this trial going on all week, and yet they never bring him here. That is the reason you have the character you have got. It is a man's actions, that is the way you did when you put poor Tom Leek in his grave, and I point to the facts of this lawsuit to show how you did poor Leek when he was not in his grave. If you would seek to rob him of his character when you put him in his grave, you robbed him of his peace while he was on earth.

"Defendant objected to the abuse of defendant.

"Mr. Faulkner: Well, this is honest abuse, and yours was dishonest, and every eyewitness knows—

"Mr. Walker: We except for another reason, you know that Luther Bingham is not in the country.

"By the Court: I don't think there was any testimony given to the jury on that subject. I don't think there was anything in that that the court ought to take further notice of. You have the benefit

of your exception. I don't think I ought to act further.

"Mr. Faulkner: Gentlemen of the jury, that is a fine excuse; a dead man's grave, a dead man's widow, a dead man's orphans—that is a little excuse, isn't it, honorable gentlemen of the jury, that there is no proof that he is in the county? (Excepted to.)

"I ask that my time be continued because I have some important things to say, and some things that you may not like any more than you have liked this that I have said, but so long as I walk with truth, and so long as I see the degrading injustice done a dead man's memory, I am one man, Mr. Culley—

"By Mr. Sanders (of counsel for the defense): I insist that he shouldn't come and address me.

"Mr. Faulkner:—that wants the right thing done.

"By the Court: I think counsel ought not to address one another in the argument of case, but address the jury.

"Mr. Faulkner: Whenever you come before a jury and you do an injustice to a man that is in his grave—perhaps if I were to do it I would smart upon a státment of it before a jury who expected to be honest, and to do right.

"I want to say to you when you brought all that proof in here about the injustice that this man did to Luther Bingham, if Luther Bingham hadn't been in the country, why didn't you come and say to the

jury in some way that Mr. Luther Bingham was not available? The fact that you wanted to bring a bugaboo before this jury shows the way you try to get murderers out in Wilson county. Write it down and read it to the supreme court if you want to. (Defendant excepted. Overruled.)"

The speech of the Attorney-General was taken down in full, and has been read by this court, which has now to observe:

(a) We are unable to understand why the trial judge, a jurist of undoubted ability, should have so far dropped the reins as to permit the argument to run such a course. He should promptly, and without waiting for objection from the defendant, have interposed a rebuke at the inception of the departure from orderly debate. Certain it is that when objection was made he should have sustained it.

(b) The State does not require or expect of its prosecuting officer that he turn upon an accused, shake his finger in the face of the latter, and address him in abusive and denunciatory terms. By the law of the State one on trial has extended to him the presumption of innocence, during the entire trial up to verdict, and of this the prosecuting official should not be unmindful. When objection was interposed the trial judge should have sustained it; and when, instead, he ruled that there was no occasion to act, reversible error was committed.

(c) Imputation of dishonesty to adversary counsel in remarks addressed to them by the dis-

trict attorney touching their conduct of the defense was an impropriety so gross that it must now appear to be such to the official who gave the words utterance. A stern rebuke at the time should have come promptly and voluntarily from the presiding judge upon whom rested the duty to see that order and decorum marked procedure in his court. It was error not to sustain objection when interposed. Whether, if it stood alone, it would be reversible error we need not determine.

Pertinent in part to the situation with which to our regret we are compelled to deal is this language used by the court of appeals of New York in *People* v. *Fielding,* 158 N. Y., 542, 53 N. E., 497, 46 L. R. A., 641, 70 Am. St. Rep., 495:

"We do not wish to express any views which would restrict counsel in fair argument, comment or appeal. We object, however, to the assertion by the learned district attorney of facts not proved, to his inflammatory appeals to passion and prejudice, and to his threat to the jury of popular denunciation, all under the sanction of the trial court. If the record in this case is sustained by the deliberate Judgment of the court of last resort, it is difficult to see the limit to intemperate language, unproved assertion, or pernicious appeals on the part of counsel for the prosecution, except their own sense of propriety. The law, in our judgment, does not thus leave an accused person, presumed to be innocent until proved to be guilty, bound and helpless in the

hands of this accuser. . . . Language which might be permitted to counsel in summing up a civil action cannot with propriety be used by a public prosecutor, who is a *quasi* judicial officer, representing the people of the State, and presumed to act impartially in the interest only of justice.''

We decline to go into an investigation of the facts developed upon a trial so tinctured by error that is fundamental, and we reverse the judgment, and remand the cause for a new trial.