# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 12, 2004 Session

## STATE OF TENNESSEE v. ANNETTE REYNOLDS

**Appeal from the Circuit Court for Giles County**
**No. 10814    Robert L. Jones, Judge**

---

**No. M2003-02991-CCA-R3-CD - Filed February 28, 2005**

---

The defendant, Annette Reynolds, was convicted of facilitation of possession of cocaine for resale, a Class C felony, and possession of drug paraphernalia, a Class A misdemeanor. The trial court sentenced the defendant as a career offender to concurrent sentences of fifteen years and eleven months, twenty-nine days, respectively. In this appeal of right, the defendant challenges the sufficiency of the evidence and contends that there was prosecutorial misconduct during closing argument. She also claims that the trial court made several errors: by denying discovery regarding the identity of the confidential informant whose information led to the search warrant for her residence; by denying her motion to suppress the evidence seized during the search; by admitting the presentence report at sentencing; and by sentencing her as a career offender. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

William J. Eledge, Lawrenceburg, Tennessee, for the appellant, Annette Reynolds.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Beverly White and Patrick Butler, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On August 8, 2002, Investigator L.C. Gill of the Pulaski Police Department executed a search warrant for crack cocaine and related paraphernalia at a residence rented by the defendant at 427 Maple Street. A woman later identified as Julie Thompson was in a parked car in front of the house at the time the officers arrived. The engine was running. Once inside the house, officers found the defendant and Ms. Thompson's husband, George Thompson, in a bedroom. A bag containing eight rocks of crack cocaine, later determined to weigh 1.6 grams, was on the dresser. Each of the rocks

had a street value of $20. Ratasha Coffee, Theresa Perry, Ricky Coleman, and William Reynolds were also at the scene. Ms. Perry had a crack pipe and a knife. Reynolds had $487 in his possession. Officers also seized $47, a crack pipe, and a Brillo pad found in the possession of the defendant. Officers did not find scales, baggies, or baking soda, which is used to make crack cocaine.

The defendant did not present any proof. The jury returned verdicts of guilt for facilitation of possession of cocaine for resale, a lesser included offense on the original indictment for possession with intent to resell, and possession of drug paraphernalia.

I

Initially, the defendant contends that the trial court erred by denying her motion for judgment of acquittal at the close of the state's proof. She claims that the circumstantial evidence presented at trial was insufficient to prove that she constructively possessed the crack cocaine.

Rule 29 of the Tennessee Rules of Criminal Procedure empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence. Overturf v. State, 571 S.W.2d 837 (Tenn. 1978). At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence. Hill v. State, 470 S.W.2d 853 (Tenn. Crim. App. 1971). The standard by which the trial court determines a motion for judgment of acquittal at that time is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994). That is, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307 (1979).

A criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 456-58 (1958); State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983). If entirely circumstantial, the facts and circumstances must "be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In such an event, the circumstantial evidence must be both consistent with guilt and inconsistent with innocence. Pruitt v. State, 460 S.W.2d 385, 3990 (Tenn. Crim. App. 1970). The weight of the circumstantial evidence is for the jury to determine. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974) (citing Patterson v. State, 4 Tenn. Crim. App. 657, 475 S.W.2d 201 (1971)). The court may not substitute its inferences for those drawn by the trier of fact in circumstantial evidence cases. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). The same standard of review is applicable whether the guilty verdict was based upon direct evidence or upon circumstantial evidence. State

v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (1971).

This court has described constructive possession as follows:

"Constructive possession requires that a person knowingly have 'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" United States v. Craig, 522 F.2d 29 (6th Cir. 1975). "In essence, constructive possession is the ability to reduce an object to actual possession." United States v. Martinez, 588 F.2d 495 (5th Cir. 1979).

State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). Additionally, "[t]he mere presence of a person in an area where drugs are discovered is not, standing alone, sufficient to support a finding that the person possessed the drugs." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Similarly, "mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." Id.

In order to support a conviction for facilitation of possession to resell, the state need not prove that the defendant possessed the illegal drugs, either actually or constructively, as an element of the crime. "It is illegal for a defendant to knowingly: . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). Possession of more than point five (.5) grams of cocaine is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1). A defendant may be criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2) [the "intent to promote or assist the commission of the offense"], the [defendant] knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

This offense occurred inside the defendant's residence. Officers found the illegal drug in plain sight in a bedroom occupied by the defendant and George Thompson, whose wife was waiting outside. Ms. Thompson was in the driver's seat of an automobile and the engine was running. There were four other persons in the residence, one of whom had a crack pipe and another of whom had a large sum of cash. Although the defendant was charged with possession to resell, the jury rejected that offense, possibly because there was no direct evidence regarding the ownership of the drug. Nevertheless, the evidence was sufficient for a jury to find beyond a reasonable doubt that the defendant, by providing the use of her residence, knowingly furnished substantial assistance in the commission of a felony.

Under Tennessee Code Annotated 39-17-425, "it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled

substance in violation of this part." Tenn. Code Ann. § 39-17-425(a)(1). The record indicates that police seized a crack pipe that was in the actual possession of the defendant. Under these circumstances, the evidence is also sufficient to support conviction for possession of drug paraphernalia.

II

Next, the defendant contends that the trial court erred by failing to exercise its authority as thirteenth juror. The state disagrees.

Rule 33(f) of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." The purpose of the thirteenth juror rule is to be a "'safeguard . . . against a miscarriage of justice by the jury.'" State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995) (quoting State v. Johnson, 692 S.W.2d 412, 415 (Tenn. 1985)). The rule requires that the trial judge must be personally satisfied with the verdict. State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995).

In State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995), our supreme court acknowledged the restoration of the thirteenth juror rule as it existed at common law, thereby mandating that trial judges exercise the duty to function as a thirteenth juror in criminal cases. An order overruling a motion for new trial establishes a presumption that the trial court has exercised the duty and no explicit statement on the record is required. Carter, 896 S.W.2d at 122; see also State v. Robert Bacon, No. 03C01-9608-CR-00308 (Tenn. Crim. App., at Knoxville, Jan. 8, 1998). It is only when the trial court expresses dissatisfaction or disagreement with the jury verdict or makes statements indicating that it has absolved itself of its responsibility that the judgment should be set aside. See Bacon, slip op. at 19.

"[W]hen [a] trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." Carter, 896 S.W.2d at 122. The state correctly points out that in this case, the trial court not only overruled the defendant's motion for new trial, but also overruled a separate motion to reconsider her motion for judgment of acquittal. The record does not indicate that the trial court ever expressed dissatisfaction or disagreement with the jury's verdicts. Given these facts, it is our view that the trial court properly exercised its duty as thirteenth juror and that the trial judge was personally satisfied with the verdicts.

III

The defendant next asserts that she is entitled to a new trial because of prosecutorial misconduct. Specifically, she complains that during final argument, the assistant district attorney impermissibly commented on her failure to call George Thompson as a defense witness. The state

contends that the issue is waived for failure to make a contemporaneous objection at trial and that any impropriety did not affect the verdict.

Initially, the state correctly points out that the defendant did not object during the prosecutor's closing argument and did not raise the issue of improper argument in a motion for new trial. Appellate relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); see State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); see also State v. Jenkins, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); State v. Rhoden, 739 S.W.2d 6, 11-12, 18 (Tenn. Crim. App. 1987). Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused [must not have waived] the issue for tactical reasons; and
(e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42. Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper argument. Sparks v. State, 563 S.W.2d 564 (Tenn. Crim. App. 1978). Generally speaking, closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). For example, our supreme court has ruled that argument "that defense counsel was 'trying to throw sand in the eyes of the jury' and 'blowing smoke in the face of the jury'" was improper argument. State v. West, 767 S.W.2d 387, 395 (Tenn. 1989). To merit a new trial, however, the argument must be so inflammatory or improper as to affect the verdict. Harrington v. State, 215 Tenn. 338, 385

S.W.2d 758 (1965). In <u>Judge v. State</u>, this court articulated the factors to be considered in making that determination:

> (1) the conduct complained of viewed in the context and the light of the facts and circumstances of the case;
> (2) the curative measures undertaken by the court and the prosecution;
> (3) the intent of the prosecutor in making the improper statements;
> (4) the cumulative effect of the improper conduct and any other errors in the record; and
> (5) the relative strength or weakness of the case.

539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

Most restrictions during final argument are placed upon the state. That is based in great measure upon the role of the prosecutor in the criminal justice system:

> [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor, indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or lesser degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935); <u>see also</u> <u>Judge</u>, 539 S.W.2d at 344-45. Thus, the state must refrain from argument designed to inflame the jury and should restrict its commentary to matters in evidence or issues at trial. The prosecutor must not express a personal belief or opinion, but whether that qualifies as misconduct often depends upon the specific terminology used. For example, argument predicated by the words "I think" or "I submit" does not necessarily indicate an expression of personal opinion. <u>United States v. Stulga</u>, 584 F.2d 142 (6th Cir. 1978). The prosecution is not permitted to reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial. <u>See</u> <u>Dupree v. State</u>, 219 Tenn. 492, 410 S.W.2d 890 (1967); <u>Moore v. State</u>, 159 Tenn. 112, 17 S.W. 30 (1929); <u>Watkins v. State</u>, 140 Tenn. 1, 203 S.W. 344 (1918); <u>McCracken v. State</u>, 489 S.W.2d 48 (Tenn. Crim. App. 1972). Although there may be no commentary on the consequences of an acquittal, the prosecution may point out the gravity of a

particular crime and emphasize the importance of law enforcement. See State v. Dakin, 614 S.W.2d 812 (Tenn. Crim. App. 1980); Bowling v. State, 3 Tenn. Crim. App. 176, 458 S.W.2d 639 (1970).

This court has observed that there are five generally recognized areas of prosecutorial misconduct related to closing argument:

> 1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
> 2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
> 3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
> 4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.
> 5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

The record reflects that during her summation, the assistant district attorney made the following comments about George Thompson:

> That gets us down to two people [who could have possessed the crack cocaine], doesn't it. [The defendant] and George Thompson. George Thompson, whose wife was sitting right outside in the car, with it running. Yes, now, defense counsel wants you to think that what's really going on here is Mr. Thompson was bringing this stuff in. He was going to sell it to her. He threw it up there.
> Did you see Mr. Thompson in here saying that? Did you see Mr. Thompson in her[e] saying, hey, you know, it was mine? I pitched it out there. No.
> They've got subpoena power. Did you hear anyone else in here claiming that there wasn't any drugs in that house? Nope. Sure didn't.
> \* \* \*
> As I stated, George Thompson, who the defense has tried to make a case about him, have you seen one witness on this witness stand, or have you heard one iota of anything from him? No, you haven't.

The defendant argues that the comments violated her "Fifth Amendment protections by subtly referring to [her] decision not to testify in her own behalf." Although this court does not interpret this as constitutional error, the record suggests that the reference to Thompson's failure to testify was inappropriate. The missing witness rule, which permits an inference that a party has

failed to call a witness because his testimony would have been unfavorable, applies when the evidence shows as follows:

> (1) that the witness had knowledge of material facts;
> (2) that a relationship exists between the witness and the party that would naturally incline the witness to favor the party; and
> (3) that the missing witness was available to the process of the court for trial.

Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). "[W]hen a party intends to argue the missing witness inference, [it] should inform the court at the earliest opportunity so that an evidentiary hearing, if necessary, can be held to establish whether the requirements for laying a proper foundation under Delk have been met." State v. Francis, 669 S.W.2d 85, 90 (Tenn. 1984).

In State v. Francis, our supreme court stated that "the Delk requirements . . . are to be strictly construed, particularly when the rights of a criminal defendant may be affected." Id. at 89. Our high court explained as follows:

> The reason for this caution is that there are several dangers inherent in the operation of the missing witness rule. The adverse inference may add a "fictitious weight to one side of the case, for example, by giving the missing witness an undeserved significance." . . . Repeated arguments about an absent witness may also create a false impression of the witness' value in the eyes of the jury. . . . . Furthermore, since the missing witness inference is usually invoked in closing argument[,] the opposing party is foreclosed from offering the jury any evidence regarding the decision not to produce the witness. . . . Thus, in determining whether to permit the application of the missing witness inference, the trial judge must make an informed decision as to the absent witness' availability to the process of the court, the witness' capability to elucidate the transaction at issue, and whether a relationship exists between the witness and the party that would naturally incline the witness to favor the party.

Id. (citations omitted).

In this instance, the prosecutor failed to raise the issue with the trial court before making the argument. Had it done so, the record would not have entitled the assistant district attorney to argue any favorable inference from Thompson's absence at the trial. Although Thompson most likely had knowledge of material facts, there was no testimony regarding the relationship between Thompson and the defendant. Nor was there any evidence that Thompson would have been naturally inclined to favor the defendant, particularly when it was her theory that he was the individual guilty of possessing the crack cocaine found at the residence. Finally, there was no evidence regarding whether Thompson was available to process. Thus, the assistant district attorney's rebuttal argument should not have included the defendant's failure to call Thompson as a witness. See Delk, 590 S.W.2d at 440.

Although inappropriate, the reference to Thompson was not so egregious as to warrant reversal by use of the factors outlined in Judge. Initially, the assistant district attorney's comments, while erroneous, appear to have been an attempt to respond to the defense argument that Thompson, not the defendant, was the possessor of the cocaine. Because the defendant failed to object contemporaneously, the trial court was left only with the option of taking curative measures on a sua sponte basis. See Judge, 539 S.W.2d at 344. Most importantly, however, it is our view that the conduct, given the facts and circumstances of the case, did not affect the verdict. The state's argument was intended to establish the defendant as the possessor of the crack cocaine. The jury, however, rejected the theory and convicted the defendant only of facilitation, implicitly concluding that Thompson possessed the crack. In short, because the missing witness argument did not constitute prosecutorial misconduct, it cannot be plain error.

IV

Next, the defendant asserts that the trial court erred by denying her motion to require the state to identify the confidential informant who provided the police with the allegations used to obtain a search warrant for her residence. The state contends that the defendant has failed to demonstrate that the information would have been favorable to the defense.

Although cited by neither party, there is a sizeable body of Tennessee law related to discovery of the identity of a confidential informant. Generally, the identity of a confidential informant is privileged. See, e.g., State v. Taylor, 763 S.W.2d 756, 760 (Tenn. Crim. App. 1988); see also McCray v. Illinois, 386 U.S. 300 (1967) (holding that defendant has no constitutional right to disclosure of confidential informant); Wallis v. State, 220 Tenn 400, 417 S.W.2d 781 (1967) (same). This court has observed that the privilege is based on a public policy seeking "to encourage citizens to assist in crime detection and prevention by giving information to law enforcement officials without unduly exposing themselves to the danger inherent in such laudable activity and to make possible their continued usefulness in future disclosures that the revelation of their identity would probably hamper and prevent." Roberts v. State, 489 S.W.2d 263, 264 (Tenn. Crim. App. 1972).

In State v. Vanderford, 980 S.W.2d 390 (Tenn. Crim. App. 1997), our court recognized that although the identity of a confidential informant is not discoverable where the defendant's sole purpose is attacking the validity of a search warrant, the privilege is not absolute. Accordingly, the court fixed the following guidelines governing a defense request for the identity of a confidential informant:

There is no fixed rule regarding when the state must divulge the identity of a confidential informant to the defendant. Whether the state should be required to disclose the identity of a confidential informant is a matter which addresses itself to the sound discretion of the trial court. The trial court must decide this question on a case by case basis, taking into consideration the facts peculiar to each case. However, there are certain factual circumstances which entitle the defendant to discover the identity of a confidential informant.

The state is required to divulge the identity of a confidential informant to the defendant when: (a) disclosure would be relevant and helpful to the defendant in presenting his defense and is essential to a fair trial; (b) the informant was a participant in the crime; (c) the informant was a witness to the crime; or (d) the informant has knowledge which is favorable to the defendant.

The defendant, as the movant for disclosure, has the burden of establishing by a preponderance of the evidence that the confidential informant's identity is material to his defense because the informant was a witness to the crime, participated in the crime, or possesses facts favorable or relevant to the defendant. If the defendant fails to establish the materiality of the confidential informant to his defense, the state is not required to divulge the identity of the informant to the defendant.

Id. at 396-97 (citations omitted).

Prior to trial in this case, the defendant filed a motion seeking discovery of the identity of the confidential informant who provided the police with the information underlying the search warrant issued for her residence. At an initial hearing, the trial court questioned defense counsel as to how the information would be relevant and helpful to the defense. Defense counsel conceded as follows:

Frankly, . . . my response would be, the identi[t]y of the informant, itself, may lead to items that would materially benefit [the defendant] Essentially, at this point, I can't answer the [c]ourt's question as to how that would benefit in a specific –

Later, at a second hearing just before the trial, defense counsel stated as follows:

Your Honor, in this particular instance, our argument would be – we don't know who the informant is. At this point, we do not know if that informant has knowledge which is favorable to the accused.
We would renew our call, under, I guess, the basic principle of Brady . . . .

In our view, the trial court properly denied the motion. The record reflects that the defendant was unable to show any basis for the discovery of the confidential informant's identity. In this appeal, he argues only that he should have been provided the information "without . . . the requirement that [he provide] an explanation of precisely how the informant's identity would have assisted [his] case."

Both the defendant and the state have treated this as a Brady claim. In the landmark case of Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court ruled that a prosecutor has a duty to furnish exculpatory evidence to the defendant upon request. Exculpatory evidence may pertain to the guilt or innocence of the accused and/or the punishment which may be imposed if the accused is convicted of the crime. State v. Marshall, 845 S.W.2d 228, 232 (Tenn. Crim. App. 1992).

Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Thus, the duty to disclose arises when the evidence is material, the evidence is favorable for the defense, and a proper request for production is made by the defendant. See United States v. Bagley, 473 U.S. 667 (1985); Strouth v. State, 755 S.W.2d 819, 828 (Tenn. Crim. App. 1986). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. United States v. Agurs, 427 U.S. 97 (1976).

Before this court may find a due process violation under Brady, the following elements must be established:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
2. the State must have suppressed the information;
3. the information must have been favorable to the accused; and
4. the information must have been material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995) (as amended on rehearing).

In this case, there is no indication that the identity of the confidential informant would have been favorable to the defendant or that the confidential informant could have provided favorable information. Likewise, the identity of the confidential informant would not have been material to either the defendant's guilt or punishment. Accordingly, the state had no duty to disclose the identity of its informant.

V

Next, the defendant contends that the trial court erred by admitting hearsay in the presentence report. The state argues that the admission of the report was proper.

The Tennessee Rules of Evidence apply to sentencing hearings but an exception is made for reliable hearsay. Tenn. Code Ann. § 40-35-209(b); State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The statute directs courts to "consider . . . the presentence report." Tenn. Code Ann. § 40-35-210(b)(2); see also Tenn. Code Ann. § 40-35-210(g). It is a well settled principle that the trial court may admit trustworthy and probative evidence, including hearsay, for sentencing purposes. State v. Flynn, 675 S.W.2d 494 (Tenn. Crim. App. 1984); State v Chambless, 682 S.W.2d 227 (Tenn. Crim. App. 1984).

The record reflects that at the sentencing hearing, the defendant made repeated general objections, on hearsay grounds, to the introduction of the presentence report. Her only specific objection was that her prior convictions should have been excluded because the disposition dates

were erroneously listed as occurring on the offense dates and because some computer information from the Department of Correction was unreliable. With regard to the first objection, Linda Lipum, the probation officer who prepared the presentence report, testified that the erroneous offense dates were the result of a computer error and that the conviction dates were accurate. The trial court determined that because it had certified copies of the various judgments of conviction, the error was not fatal. With regard to the second objection, the trial court specifically found that computer information from the Department of Correction was "sufficiently reliable to be admitted into evidence, but subject to rebuttal by other evidence."

In our view, the trial court did not err in its consideration of the presentence report. Not only does our statutory law permit the consideration of reliable hearsay at sentencing, it requires consideration of the presentence report. The probation officer who prepared the report testified at the hearing and was subjected to an extensive cross-examination by defense counsel. The trial court tested the challenged information and determined it to be sufficiently reliable and verifiable by other documents introduced by the state. Moreover, the defendant did not deny she committed the earlier crimes; nor did she seek a continuance for an opportunity to refute the accuracy of the information. In short, the defendant is not entitled to relief on this issue.

The defendant also contends that to the extent it provides for the admissibility of reliable hearsay, Tennessee Code Annotated section 40-35-209(b) is violative of the separation of powers clause of the Tennessee Constitution. She fails, however, to cite any legal authority in support of her position. Accordingly, this claim must fail. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987).

VI

The defendant next asserts that the trial court erred by sentencing her as a career offender because the statutorily required maximum sentence violates the constitutional separation of legislative and judicial powers. The state contends that the issue is waived because it is unsupported by any authority. The defense brief contains no citation to any legal authority that would support this position. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). This court will not, therefore, address this constitutional issue.

VII

Finally, the defendant contends that the trial court erred by overruling her motion to suppress the evidence seized by police when they searched her residence. Specifically, she argues that the affidavit fails to show the affiant's basis of knowledge.

-12-

An affidavit is an indispensable prerequisite to the issuance of any search warrant. Tenn. Code Ann. § 40-6-103; State ex rel. Blackburn v. Fox, 200 Tenn. 227, 292 S.W.2d 21, 23 (1956). It must establish probable cause. Tenn. Code Ann. § 40-6-104; Tenn. R. Crim. P. 41(c). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 181 S.W.2d 351, 352 (1944).

Also, fundamental to the issuance of a search warrant is the requirement that the issuing magistrate make an independent determination that probable cause exists. See State v. Moon, 841 S.W.2d 336, 337 (Tenn. Crim. App. 1992). Because the magistrate must make an independent determination, it is imperative that the affidavit contain more than conclusory allegations. "'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.'" Id. at 338 (quoting United States v. Ventresca, 380 U.S. 102, 108-09 (1965)).

The general rule is that if the information in the affidavit is supplied by a confidential informant, the adequacy of the affidavit is measured by a two-pronged test:

> (1) whether the affidavit contains the basis of the informant's knowledge (the "basis of knowledge prong"); and
> (2) whether the affidavit includes a factual allegation that the informant is credible or the information is reliable (the "veracity prong").

State v. Jacumin, 778 S.W.2d 430, 432, 436 (Tenn. 1989) (relying upon Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969)). In Aguilar, the United States Supreme Court held that a search warrant was improvidently issued by the magistrate because the affidavit did not contain any underlying circumstances indicative of illegal activity or any facts disclosing the credibility of the informant or the reliability of the information given. 378 U.S. at 114. Although the United States Supreme Court no longer employs the Aguilar-Spinelli test, our supreme court has determined that the test, "if not applied hypertechnically, provide[s] a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant . . . [and] is more in keeping with the specific requirement of Article I, Section 7 of the Tennessee Constitution." Jacumin, 778 S.W.2d at 436.

The affidavit of Officer L.C. Gill, submitted in support of the search warrant for the defendant's residence, recites the following:

> [W]ithin the last seventy-two hours an individual who is working with the affiant has seen crack cocaine being sold by [the defendant] from said residence. This informant also stated that there were several other young black males at the residence who were selling crack cocaine. One of them being C.J. Bryants. This informant has given information in the past that has [led] to the seizure of money and drugs. The informant has also given information which has [led] to the arrest and conviction of

more than five individuals for drug related offenses. The informant is familiar with the appearance, packaging and sale of controlled substances.

The information above was also verified by other independent sources . . . [w]ho said that [the defendant] was selling and using crack cocaine at said residence.

Based on the 11 years of narcotic undercover operation and over 400 hours of training in narcotics investigations, affiant knows above described occurrences are consistent with drug trafficking. Based on the information given the affiant believes crack cocaine is being sold and stored at the above mentioned residence. . . .

After a hearing on the defendant's motion to suppress, the trial court determined that the affidavit was sufficient. It made the following findings:

[T]he [c]ourt concludes that any one sentence taken out of context may be problematic, in regard to the affidavit, but the entire affidavit, taken in overall context, seems to support both the basis of knowledge for the informant, and the affiant, and evidence of the reliability of the informant.

First of all, it's not clear from the actual words of the affidavit that the informant had told the affiant that he had actually seen the drugs there in the last [72] hours, but when you read that along with the last sentence, which says that the informant stated there were several other young black males at the residence that were selling crack cocaine.

And the fact that the preceding sentence talks of the informant working with the affiant, then those two portions, taken together, would indicate that the informant was there in his roll of cooperating witness, with [Investigator] Gill as the affiant, and that he had communicated to [Investigator] Gill what he had seen.

[Investigator] Gill also says, in his affidavit, that the informant is familiar with the appearance, packaging, and sale of controlled substances. So, all of that does, in this [c]ourt's mind, satisfy the knowledge prong of Aguilar and Spinelli, and the related Tennessee cases.

*     *     *

And besides all of that, Mr. Gill has corroborated the informant's information from unnamed, independent sources who reported that [the defendant] was selling and using cocaine at the premises.

The defendant's argument on appeal is that the affidavit describes "no basis of knowledge of the informant." In our view, however, the affidavit establishes that the informant personally witnessed the defendant and others selling crack cocaine from the defendant's residence. The trial court properly concluded that the affidavit sufficiently set forth the basis of the informant's knowledge and credibility. The affidavit need not be so specific to "contain conclusive allegations of guilt . . . [but only] information upon the basis of which a neutral and detached magistrate could find probable cause for the issuance of the search warrant." State v. Bryan, 769 S.W.2d 208, 210-211 (Tenn. 1989). Further, Jacumin warns that the tests should not be "hypertechnically applied" and that, on appeal, the probable cause determination by the magistrate is entitled to deferential

treatment.  <u>Jacumin</u>, 778 S.W.2d at 431-32.  As such, the trial court's denial of the motion to suppress in this case is entitled to be upheld on appeal.

Accordingly, the judgments of the trial court are affirmed.

_____

GARY R. WADE, PRESIDING JUDGE