# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE v. ROLLY WILLIAM WHITFORD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3239    J. Randall Wyatt, Jr., Judge**

_____

**No. M2009-02525-CCA-R3-CD - Filed January 20, 2011**

_____

The Defendant, Rolly William Whitford, pled guilty to sexual battery and rape and agreed for  the trial court to determine the length and manner of service of his sentence.  After a sentencing hearing, the trial court sentenced the Defendant to two years for the sexual battery conviction and ten years for the rape conviction, and it ordered that the sentences run consecutively for an effective sentence of twelve years in the Tennessee Department of Correction.  The Defendant appeals, contending the trial court erred when it: (1) enhanced his sentences; (2) ordered consecutive sentencing; (3) denied him an alternative sentence; and (4) admitted into evidence his 1984 psychosexual evaluation over his objection.  After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the Appellant, Rolly William Whitford.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant was indicted for four counts of sexual battery and two counts of rape. He agreed to plead guilty to one count of sexual battery and one count of rape, and the State

agreed to dismiss the other charges against him. The State also agreed not to seek an indictment for pornographic images found on the Defendant's computer. During the Defendant's plea submission hearing, the parties noted that the sexual battery conviction was a Class E felony with a sentencing range of one to two years, to be served at 30%, and the rape conviction was a Class B felony with a sentencing range of eight to twelve years, to be served at 100%. The State set forth the following summary of the factual basis for the Defendant's guilty pleas:

> [H]ad this matter proceeded to trial . . . we would have been calling for purposes of that hearing [M.A.P.],[1] who was the daughter of [the Defendant's] wife. She would have testified that sometime during the summer of 2005, she believed between August and September of 2005, that she was asleep [at] a residence here in Nashville, Davidson County, that she awoke to have the [D]efendant in her room, that the [D]efendant had digitally penetrated her genitals.

> Had the other counts proceeded to trial, we would have provided testimony from [B.D.] who would have testified that on diverse occasions in Nashville, [the Defendant, a friend of her family] had come into her bedroom. And on one occasion she had awoken to find her clothing disturbed. She would have also testified that other occasions in other jurisdictions, that similar occurrences had occurred on one of those occasions which [the Defendant] had fondled her genitals when she had awakened. [The Defendant] provided statements during a telephone conversation with [B.D.'s] mother in which he had admitted to multiple instances, both in Nashville and []other locations where he had fondled the genitals of [B.D] while she was asleep. He also made admissions that with respect to [M.A.P] that he had fondled her genitals on a single occasion here in Nashville.

The Defendant pled guilty and agreed to allow the trial court determine the length and manner of his sentences. The following evidence was presented during the Defendant's sentencing hearing: The State introduced the presentence report, which showed that, in 1985, the Defendant had been convicted in Connecticut of "sexual assault 2nd degree and injury or risk of injury to or impairing the morals of a child." The Defendant advised the officer writing the presentence report, Vickie Choisser, that this conviction involved a seven-year-old girl, with whose family the Defendant was residing at the time of these crimes. Officer Choisser testified that, as part of her investigation, she obtained a sexual evaluation of the Defendant conducted in preparation for sentencing the Defendant for his 1985 sexual assault

---

[1]In order to protect the privacy of the minor victims, we will refer to them by their initials only.

conviction. That evaluation revealed that the Defendant reported that, around 1975, he experienced "intermittent sexual feelings towards young girls, which he never acted upon." According to the Defendant, these feelings increased in their intensity, and, in November 1981, the Defendant sought psychiatric help in Florida where he was living at the time. The report also indicated that, around 1978, the Defendant's father was arrested for sexually molesting "young young girls" and that the Defendant's sisters told him that their grandfather fondled them when they were children. The Defendant reported that he himself had been engaged "in the fondling of young girls between the ages of seven and thirteen years [on] an ongoing basis since he was nineteen years old." The report also detailed the events surrounding the Defendant's 1985 convictions, stating that the Defendant was living with a church pastor, who had a seven-year-old daughter. The Defendant repeatedly took the daughter out of her room at night and into his own bedroom. He performed oral sex on her and, on one occasion, had her touch his penis. This behavior continued until the girl's father found her in bed with the Defendant and removed her.

B.D.[2] testified that she was nineteen at the time of the sentencing hearing and that the Defendant committed his crimes against her while the two were in Nashville, in the state of Georgia, and in Las Vegas, Nevada. B.D. testified that, because of the Defendant's actions, she attempted to kill herself five or six times over the last two years. She said she had not slept "very well" in the last two years and did not go to sleep until she saw the sun rise. She said she did not trust people or allow them to touch her. She described herself as "always very scared." B.D. felt as if a part of her had been taken away.

B.D. conceded she had been the victim of molestation three other times but said none of the other instances occurred while she was sleeping. The first instance of molestation, which was committed by a man other than the Defendant, occurred when B.D. was three years old. The second instance, also by a man other than the Defendant, occurred when B.D. was seven or eight years old. B.D. said she was "just starting to get better" and recover from these instances when the Defendant molested her. B.D. said she was unsure whether the Defendant knew about her previously having been molested. B.D. asked that the Defendant be sentenced to jail, expressing her concern that he would commit a similar crime again if not incarcerated.

Detective Mayo testified that she investigated the charges against the Defendant in this case and, in doing so, participated in a recorded telephone conversation between B.D.'s mother and the Defendant. During this telephone conversation, the Defendant admitted that, while in Nashville, he had gone into B.D.'s bedroom several times during the night. He

---

[2]When this victim testified, she identified herself as C.D., whereas the State's recitation of the facts identified this victim as B.D. For consistency, however, we will continue to refer to her as B.D.

admitted that, on one of these occasions, he touched B.D.'s breast over her clothing and also touched a "sexual organ." The Detective said the Defendant went on to say that, after entering her bedroom, he put his "hand on her mount [sic] and her pussy area" but that he immediately left when B.D. awoke. The Defendant indicated that two or three of these incidents occurred in Nashville. Upon further questioning by B.D.'s mother, the Defendant also admitted to similar behavior in Georgia and Las Vegas. Detective Mayo recalled that, when B.D.'s mother asked the Defendant why he had done these things, the Defendant responded that he "thought [B.D] would enjoy it."

During this telephone conversation, the Defendant also made several statements concerning his conduct toward M.A.P., whose allegations led to the Defendant's indictment for rape by digitally penetrating M.A.P. In reference to M.A.P., the Defendant admitted to B.D.'s mother, "I went into her bedroom and put my hand on her and put my hand on top of her pussy and she woke up and I left the room." The detective also, as part of this investigation, searched the Defendant's computer, which contained six images of child pornography. The computer also contained a video of two young girls who, during the video, disrobed and urinated.

On cross-examination, the detective explained that agents examined two computers belonging to the Defendant but acknowledged that he himself did not conduct these examinations. Detective Mayo testified that he attempted to speak with the Defendant but that the Defendant refused to talk to him. The detective conceded that his investigation did not yield evidence that the Defendant had engaged in sexual conduct with children between his 1984 conviction and these 2007 charges.

Reverend Norman Richards testified he had known the Defendant for approximately two years, having met the Defendant while the Defendant was incarcerated. Reverend Richards visited the Defendant approximately twice a month, and, during these visits, the two read the Bible together. The Defendant expressed remorse for what he had done, and the two prayed together and asked for forgiveness. The reverend said the Defendant would be welcome at his church and that he would assist the Defendant in the religious aspects of his life.

The Defendant addressed the court, expressing his remorse for hurting the victims. He said that he wanted help and that he did not want to engage in similar behavior ever again. The Defendant expressed his concern that he would not receive the help he needed in prison.

Based upon this evidence, the trial court issued a written order in which it found that three enhancement factors applied and no mitigating factors applied to the Defendant's sentence. It then sentenced him two years for the sexual battery conviction and to ten years

for the rape conviction and imposed consecutive sentencing. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it: (1) enhanced his sentence; (2) imposed consecutive sentencing; (3) denied him an alternative sentence; and (4) admitted into evidence his 1984 psychosexual evaluation over his objection.

### A. Sentencing
### 1. Length and Manner of Service of Sentence

The Defendant contends on appeal that the trial court improperly applied each of the four enhancement factors to his convictions and also when it ordered that his sentences run consecutively. The State counters, first, that the trial court's determinations should be presumed correct by this Court because the Defendant failed to include in the record the psychosexual evaluation ordered by the Court and M.A.P.'s victim impact statement. The State argues that, even absent this oversight, the trial court's sentence should be affirmed because the Defendant has not shown that the trial court erred and that the record fully supports the trial court's decisions.

The State is correct that it is the duty of the appealing party to provide a full and complete record. *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) (holding that the appealing party has a "duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal"). In the absence of a complete record, we must presume the findings of the trial court are correct. *See State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992) ("Absent an essential part of the record, this [C]ourt must presume that the trial court's determination is correct."). The omission of the psychosexual evaluation and M.A.P.'s victim impact statement will hamper our review of some of the issues discussed below. Nonetheless, we will discuss the issues the Defendant presents on appeal based upon the record before us.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court properly sentenced the defendant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. If the trial court followed the statutory

sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006), *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Tennessee Code allows a sentencing court to consider the following enhancement factors, among others, when determining whether to enhance a defendant's sentence:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . . .

(4) A victim of the offense was particularly vulnerable because of age or physical or mental disability;

. . . .

(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

. . . .

(14) The defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense;

T.C.A. § 40-35-114(1), (4), (7) and (14) (2006).

In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2003). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8-9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2006); *see Carter*, 254 S.W.3d at 343.

### a. Previous History of Criminal Convictions

The Defendant contends the trial court misapplied enhancement factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior, to enhance his sentence because this enhancement factor was based on "one conviction that occurred over two decades prior to this case." When it applied this enhancement factor, the trial court stated:

The Court finds that the Defendant has been convicted of Sexual Assault of a seven year old girl in 1984 as well as other sexual acts again Ms. [B.D] that were committed outside the state. The Court also finds that none of these offenses have been used to enhance the Defendant's sentencing range since he is a range I offender. The Court therefore finds that the State has demonstrated by a preponderance of the evidence that the Defendant has a previous history of criminal behavior in addition to what is necessary to establish the appropriate range. The Court will use this factor to enhance the Defendant's sentence. [*See* T.C.A. § 40-35-114(1)].

We first note that the trial court applied this enhancement factor based upon the Defendant's 1985 sexual assault conviction and other criminal behavior, which included sexual assaults against B.D. in Georgia and Nevada. The Defendant admitted in a recorded telephone conversation that he inappropriately touched B.D. while in Las Vegas and Georgia. The trial court properly considered this prior criminal behavior by the Defendant as a basis for the application of Tennessee Code Annotated section 40-35-114(1). *See State v. Carico*, 968 S.W.2d 280, 288 (Tenn. 1998) (stating that "[t]he phrase 'criminal behavior' has not been defined by this Court for purposes of the enhancement factor, but, whatever the precise definition may be, sexual acts with a 10 year old child clearly constitute criminal behavior" and holding that "[t]he evidence of the appellant's prior sexual acts was properly considered by the trial court as criminal behavior"). Further, this Court has recognized that a single prior conviction, even if only a misdemeanor, may support an enhancement of the defendant's sentence, even when unrelated in nature to the current charge. *See, e.g., State v. Leon James Anderson*, No. M2004-00965-CCA-R3-CD, 2005 WL 1000235, at *5 (Tenn. Crim. App., at Nashville, Apr. 29, 2005) (citing *State v. Willie Givens*, No. M2000-02883-CCA-R3-CD, 2002 WL 1400049, *18 (Tenn. Crim. App., at Nashville, June 28, 2002)), *no Tenn. R. App. P. application filed*. The record in the case under submission clearly shows that the Defendant was convicted of the sexual assault of a seven-year-old girl in 1985. Because the Defendant was sentenced as a Range I offender, his previous conviction was not necessary to establish his range. The trial court did not err when it applied enhancement factor (1) based upon this prior conviction and evidence of previous criminal behavior. *See id.*

### b. Victim Vulnerability

The Defendant next contends that the trial court erred when it applied enhancement factor (4), that the victim of the offense was particularly vulnerable because of age or physical or mental disability, because there was "simply no evidence in the record that the victims were of such a young age that they were particularly vulnerable." When finding this enhancement factor applicable, the trial court stated:

> The Court finds that the victim in this count, [B.D.], was sixteen years old at the time of her assault and that she was vulnerable because of her age, her physical condition (being asleep), and the fact that she was twice previously a victim of sexual molestation. The Court finds that these conditions constitute physical and mental disability. The Court therefore finds that the State has demonstrated by a preponderance of the evidence that the victim was particularly vulnerable because of age or physical or mental disability. The Court will use this factor to enhance the Defendant's sentence. [*See* T.C.A. § 40-35-114(4)].

Our Supreme Court has stated that with regard to factor (4), "the vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age." *State v. Adams*, 864 S.W.2d 31, 35 (Tenn. 1993). A victim may be particularly vulnerable if he or she is "incapable of resisting, summoning help, or testifying against the perpetrator." *Id*. The State bears the burden of proving the victim's vulnerability, but the evidence need not be extensive. *Id.*; *State v. Poole*, 945 S.W.2d 93, 97 (Tenn. 1997). The application of factor (4) is appropriate if the facts of the case show that the victim's vulnerability had some connection to or some influence on the victim's inability to resist, to summon help, or to testify against the defendant. *State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001) (citing *Poole*, 945 S.W.2d at 96).

Enhancement factor (4) has been applied in the context of a sleeping victim. *See Lewis*, 44 S.W.3d at 506 (finding particularly vulnerable enhancement factor applicable when arson was committed at 3:00 a.m., a time when residents of apartment building were sleeping); *State v. Haire*, No. E2000-01636-CCA-R3-CD, 2002 WL 83604, at \*20 (Tenn. Crim. App., at Knoxville, Jan. 22, 2002) (holding enhancement factor (4) applicable when defendant shot and killed sleeping victim), *no. Tenn. R. App. P. 11 application filed*; *State v. Nicholas Williams*, No. M1999-00780-CCA-R3-CD, 2001 WL 741935, at \*11 (Tenn. Crim. App., at Nashville, July 3, 2001) (holding that, because sleeping, intoxicated minor victims were particularly vulnerable to the defendant's attack, application of enhancement factor (4) was proper), *perm. app. denied* (Tenn. Dec. 17, 2001); *State v. Tony Wayne Snyder*, No. 03C01-9403-CR-00101, 1995 WL 687581, at \*8 (Tenn. Crim. App., Knoxville, Nov. 21, 1995) (sleeping seven-year-old victim was particularly vulnerable to the offense of arson), *perm. app. denied* (Tenn.1996).

In the case under submission, we conclude that the evidence supports the trial court's application of enhancement factor (4) to the Defendant's sentence. The Defendant entered the victims' room during the night after they had fallen asleep. He then fondled them until they awoke and, upon their awakening, rapidly left the room. The victims, being asleep, were incapable of resisting the Defendant. The Defendant is not entitled to relief on this issue.

### c. Gratify Defendants Desire for Pleasure or Excitement

The Defendant next contends that the evidence does not support the trial court's application of enhancement factor (7), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. When finding this enhancement factor applicable, the trial court stated:

The Court finds that the Defendant touched the victim in this case on her

breasts while she was asleep. The Court also finds that the Defendant has a prior and contemporaneous history of sexual desire for young female children and that he has admitted that he has a sexual problem as it relates to children. The Court therefore finds that the State has demonstrated by a preponderance of the evidence that the offense involved a victim and was committed to gratify the Defendant's pleasure or excitement. The Court will use this factor to enhance the Defendant's sentence. [*See* T.C.A. § 40-35-114(7)].

The record contained adequate evidence of the Defendant's sexual conduct involving children. The Defendant has failed to include the psychosexual evaluation ordered by the trial court. As previously stated, it is the Defendant's duty to prepare a complete record and the failure to do so results in our presumption that the trial court's determinations are correct. *See Ballard*, 855 S.W.2d at 560; *Boling*, 840 S.W.2d at 951. We must presume, therefore, that the record supports the trial court's finding that "the [Defendant] has admitted that he has a sexual problem as it relates to children." The Defendant, by his own admission, needed "help" and did not want to engage in harmful behavior toward children again. He had previously been convicted of sexual crimes against a seven-year-old. The Defendant entered the victims' bedrooms while they were sleeping and fondled them. There can be little reason for his actions other than his own sexual gratification and pleasure. The trial court did not err when it applied enhancement factor (7). The Defendant is not entitled to relief on this issue.

### d. Position of Trust

The Defendant next asserts that the evidence does not support application of enhancement factor (14), that the defendant abused a position of public or private trust, with regard to B.D. When finding this enhancement factor, the trial court found:

> The Court heard evidence about this case both at the instant hearing and during the Defendant's Motion to Suppress. The Court finds that the Defendant was the stepfather of [M.A.P.] when he committed the rape against her and that he was a family friend of [B.D.]'s mother and that the victim was staying at his house when he committed the sexual assault against her. The Court therefore finds that the State has demonstrated by a preponderance of the evidence that the Defendant abused a position of private trust. The Court will use this factor to enhance the Defendant's sentence. [*See* T.C.A. § 40-35-114(14)]

Our Supreme Court has discussed factor (14)'s applicability:

> Application of [this] factor requires a finding, first, that the defendant

occupied a position of trust, either public or private. The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability or faith.

*State v. Gutierrez*, 5 S.W.3d 641, 645 (Tenn. 1999) (quoting *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996)).

In this case, the trial court considered evidence presented during sentencing and during the Defendant's Motion to Suppress hearing, a transcript of which is not included in the record. The trial court found that the evidence presented at those hearings proved that the Defendant was a friend of B.D.'s family. B.D. spent the night at the Defendant's house, and, during that time, he was responsible for her care. We conclude that this evidence adequately supports the trial court's application of this enhancement factor. The Defendant is not entitled to relief on this issue.

We affirm the Defendant's sentence of two years for the sexual battery conviction and ten years for the rape conviction.

### e. Consecutive Sentencing

We now turn to address the Defendant's contention that the trial court erred when it ordered consecutive sentencing. The Defendant asserts that he was "60 years old [at the time of sentencing] suffers from a number of physical ailments . . . [making] it unlikely he would be a danger to society in the future." He further notes he refrained from offending during the twenty years between his 1985 sexual assault conviction and his convictions in this case. He argues his abstinence indicates "there is no 'societal protection' need for consecutive sentences in this case."

If an offender meets one or more statutory criteria in Tennessee Code Annotated section 40-35-115, whether or not he should be sentenced consecutively or concurrently is within the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the seven factors exists. The factor relevant to this case is factor (5), that:

[t]he defendant is convicted of two (2) or more statutory offenses involving

sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims . . . .

T.C.A. § 40-35-115(b)(5). These criteria are stated in the alternative; therefore, only one need exist in order to impose consecutive sentencing.

In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), 103(2); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

When it ordered the Defendant's sentences run consecutively, the trial court stated:

Tennessee Code Annotated § 40-35-115 enumerates the potential factors for sentences to run consecutively if a defendant has sustained multiple convictions. The State . . . submits, pursuant to subsection (b)(5), that the Defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the [D]efendant and that victims, the time span of the Defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical, and mental damage to the victims. Tenn. Code. Ann. § 40-35-115[(b)](5). The Court finds that the Defendant had pled guilty in this case to two sexual offenses against a minor as well as being convicted of sexual assault against a seven year old girl in 1984. The Court finds that the Defendant in this case was acting as a stepfather to [M.A.P.] and a friend of the family to [B.D] when he committed these crimes and that this is a relationship of trust. The Court also finds that the Defendant's sexual activity against [B.D.] occurred over a few months but that the sexual activity against [M.A.P.] occurred years before and had gone undetected until [B.D.] reported the Defendant. The Court finds that the actions against these victims varied from touching of the breast to penetration of the vagina. Finally, the Court finds that the testimony of [B.D.] and the victim impact state of [M.A.P.] demonstrate theat the mental anguish each has suffered and is still suffering as a result of the Defendant's actions against each of them. The Court is therefore of the opinion that it may consider this factor in deciding whether to order the Defendant's sentences to run consecutively or concurrently.

The trial court, in making its determination that the Defendant should be sentenced consecutively, explicitly stated it relied upon M.A.P.'s victim impact statement. M.A.P.'s victim impact statement is not part of the presentence report, and the Defendant failed to include this statement in the record. As previously stated, it is the Defendant's duty to prepare a complete record, and the failure to do so results in our presumption that the trial court's determinations are correct. *See Ballard*, 855 S.W.2d at 560; *Boling*, 840 S.W.2d at 951.

Despite the absence of M.A.P.'s victim impact statement from the record, there is ample evidence contained in the record that support the trial court's determination. In our review, we determine that the trial court herein thoroughly and completely considered the criteria of Tennessee Code Annotated section 40-35-115(b)(5) prior to the imposition of consecutive sentences and stated those reasons on the record. The trial court carefully examined each criteria and related it to the facts of the case and properly ordered consecutive sentencing. The effective sentence of twelve years is appropriate for the crimes committed by the Defendant. The Defendant is not entitled to relief on this issue.

## 2. Denial of Alternative Sentencing

The Defendant contends the trial court improperly denied him an alternative sentence given his "age, lack of a long history of criminal conduct, and physical ailments." He further complains that the trial court failed to state on the record its reasons for denying an alternative sentence pursuant to Tennessee Code Annotated section 40-35-102(6).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2009)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered, but not presumed, a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is *not bound* by the advisory sentencing guidelines; rather, it *shall consider* them. T.C.A. § 40-35-102(6) (emphasis added).

We note that, in this case, the Defendant was convicted of a Class B felony, which prevents the Defendant from being considered a favorable candidate for alternative sentencing for his rape conviction. Nonetheless, he remains eligible for an alternative sentence because, while his effective sentence was twelve years, each of his sentences was ten years or less, and the offenses for which he was convicted are not specifically excluded by statute. *See* T.C.A. §§ 40-35-102(6), -303(a) (2009); *State v. Goode*, 956 S.W.2d 521,

527 (Tenn. Crim. App. 1997).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2009).

When sentencing the Defendant the trial court cited Tennessee Code Annotated section 40-35-103 and stated that the Defendant's sentence was "the minimum sentence necessary to protect society and is the least severe measure necessary to appropriately punish the Defendant for the offenses committed." As previously stated, the trial court found that the Defendant's conduct against "[B.D.] occurred over a few months but that the sexual activity against [M.A.P.] occurred years before and had gone undetected until [B.D.] reported the Defendant." This supports the trial court's implicit finding of Tennessee Code Annotated section 40-35-103(A), that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct." Because the trial court considered the sentencing principles and all relevant facts and circumstances, the presumption that the trial court was correct in denying alternative sentencing remains in effect. *See Ashby*, 823 S.W.2d at 169. Given that the record overwhelmingly justifies confinement, we conclude that the trial court did not erroneously deny the Defendant alternative sentencing in this case.

### B. Admission of 1984 Psychosexual Evaluation

The Defendant contends that the trial court erred when, at the sentencing hearing, it admitted into evidence a 1984 psychosexual evaluation conducted after he sexually abused a seven-year-old girl in Connecticut. He asserts that the report contains unauthenticated hearsay. We first note that the Defendant failed to include the report in the record. Such omission hampers our review of that document for inadmissible hearsay and for whether it was properly authenticated. *See Ballard*, 855 S.W.2d at 560; *Boling*, 840 S.W.2d at 951.

We conclude the trial court did not abuse its discretion when it considered the

psychosexual evaluation. It is well settled in Tennessee that a trial court has statutory authority to admit trustworthy and probative evidence, including hearsay, for sentencing purposes. *State v. Moss*, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999) (citing *State v. Flynn*, 675 S.W.2d 494 (Tenn. Crim. App. 1984); *State v. Chambless*, 682 S.W.2d 227 (Tenn. Crim. App. 1984); and T.C.A. § 40-35-209(b)). The record shows that the report, which the Defendant voluntarily released to the officer preparing his presentence report, was part of the record from his previous conviction. Therefore, it was both trustworthy and probative. The trial court properly considered this evidence.

### III. Conclusion

After a thorough review of the record and the applicable authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE