**STATE of Tennessee, Appellee,**

v.

**Michael Edward CHAMBLESS, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 11, 1984.

Permission to Appeal Denied by Supreme Court Dec. 17, 1984.

Hughie Ragan, Jessie H. Ford, III, Jackson, for appellant.

William M. Leech, Jr., State Atty. Gen. & Reporter, Gordon W. Smith, Asst. State Atty. Gen., Nashville, James G. Woodall, Dist. Atty. Gen., Richard Leigh Grinalds, Asst. Dist. Atty. Gen., Jackson, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of murder in the second degree and sentenced to serve forty-five years. He was also convicted of using a firearm in the commission of a felony and sentenced to serve five years on the offense. The trial court found the defendant to be a Range II offender.

The defendant says the trial court erred in denying his motion to dismiss the indictment on the ground of racial and gender discrimination in the selection of grand jury foremen in Madison County, says the evidence was not sufficient to sustain the jury's guilty verdict, says the trial court erred in allowing evidence of the defendant's removal of the victim's body from the

shooting scene, says the trial court erred in excluding certain testimony of the victim's wife, says the trial court erred in failing to instruct the jury on temporary insanity, says the trial court erred in denying the motion to suppress the defendant's confessions, says the trial court erred in failing to instruct the jury contemporaneously that the defendant's prior conviction was to be considered only for impeachment purposes, says the trial court erred in sentencing the defendant for the use of a firearm during the commission of the murder, and says the defendant's sentence was erroneous because the trial judge considered improper evidence at the sentencing hearing.

The judgments are affirmed.

In a pretrial motion, the defendant sought to dismiss the indictments on grounds that he had been denied due process and equal protection of the laws by systematic exclusion of black persons and women from the position of grand jury foreman. On appeal, he relies principally upon *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), in which the Supreme Court assumed that racial discrimination in selection of the grand jury foreman would require reversal of a conviction. For several reasons, we conclude the defendant is not entitled to relief on this issue.

■ Initially, under decisions of our State Supreme Court, this defendant, a white male, has no standing to challenge the failure to appoint a woman as grand jury foreman. *State v. Workman*, 667 S.W.2d 44 (Tenn.1984); *see also State v. Coe*, 655 S.W.2d 903 (Tenn.1983).

Next, it is not at all clear that a white defendant is denied due process by the exclusion of black persons from service as foreman of the grand jury. In a recent decision, the United States Supreme Court rejected an identical claim in the context of a federal grand jury. *Hobby v. United States*, —— U.S. ——, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984). The Court distinguished *Rose v. Mitchell* on two grounds. First, that cause was brought by members of the allegedly excluded class under an equal protection claim. Second, the state selection process was more subject to abuse than the federal method, by which the foreman is chosen from the members of a presumably properly constituted grand jury panel; and, the state grand jury foreman was thought to have "virtual veto power" over the indictment proceedings, in contrast to the "strictly clerical tasks" of the federal foreman. 104 S.Ct. at 3098.

The Court in *Hobby* concluded:

We hold that, assuming discrimination entered into the selection of federal grand jury foremen, such discrimination does not warrant the reversal of the conviction of, and dismissal of the indictment against, a white male bringing a claim under the Due Process Clause.

Id. 104 S.Ct. at 3099.

■ The defendant in the case before us is a white male. He would therefore fall within the rationale in *Hobby* that the reversal of the conviction and dismissal of the charges is not warranted under his due process claim. The state process in *Mitchell* was, of course, that of Tennessee. Although we think that the powers of our grand jury foremen were greatly exaggerated by the Supreme Court,[1] it appears that *Hobby* leaves open the possibility of the

---

1. Even if our state appointment procedure is more susceptible to impermissible discrimination, it is difficult to see how the assumed veto authority in the bringing of indictments could work to the detriment of a particular defendant, since it could only nullify a true bill.

In assuming a veto power in the withholding of the signature of the foreman on a true bill the United States Supreme Court does not recognize that the function is merely ministerial and may be cured by resubmitting the bill for signature of the foreman. The dismissal of an indict-

ment for lack of endorsement by the grand jury foreman does not prohibit the return of a subsequent indictment on the charge. Furthermore, the failure of the grand jury foreman to endorse the indictment is not automatically fatal. The accused must make a timely motion to dismiss the indictment for absence of the endorsement. If the defendant goes to trial without objection, the defect is waived, and the indictment is valid. *Applewhite v. State*, 597 S.W.2d 328 (Tenn.Cr. App.1979).

due process claim made in the case before us.

Therefore, we have examined the record under the guidelines of *Rose v. Mitchell.* The record shows that during the pertinent times the black population of Madison County was 34.2%. There is no showing of what percentage of this number would be qualified to serve as foreman of the grand jury by age or other neutral qualifications. The evidence further shows that during a period of fifty years only nine persons have served as grand jury foreman. The trial judge who has been either exclusively the person to select the foreman or the person to appoint the foreman in consultation with another judge since 1974 testified that in the selection of the foreman, women and blacks have been considered but, for reasons not shown, have not been selected.

■ We do not find from the evidence that any recognizable class is singled out for exclusion from consideration for this position. Considering the small number of appointments to the position over the fifty-year period, we cannot say that the failure to appoint a black person is the result of systematic exclusion. *See Rose v. Mitchell, supra; State v. Beal,* 614 S.W.2d 77 (Tenn.Cr.App.1981).

The evidence shows that on June 29, 1983, the defendant shot the deceased six times with a .22 caliber rifle and subsequently engaged another to help him remove the body from the scene of the killing. In the course of the removal, the man who was helping the defendant alerted a wrecker driver that the body was in the trunk of his car. The police apprehended the defendant and his companion, and recovered the body and the rifle.

The state's evidence also consisted of statements made by the defendant to lay people and to the police in which the defendant admitted shooting the deceased.

At trial, the defendant testified the shooting was done in self-defense.

■ The evidence in this case is more than sufficient to support the verdict of the jury. The statements of the defendant to officers and others that he shot the deceased and the evidence that he shot the deceased six times, took the deceased's watch and wallet, and attempted to remove the body from the scene of the crime in an apparent effort to conceal the killing were sufficient to support an inference of malice upon which the jury could find guilt of murder in the second degree and reject the claim of self-defense raised by the defendant.

The evidence is sufficient for a rational finder of facts to find guilt beyond a reasonable doubt.

■ The trial court properly allowed the state to show that the defendant removed the body of the deceased from the home and that he placed it in the trunk of a car to be transported away. This conduct was relevant on the issue of the defendant's intent and guilty knowledge. This evidence could be considered as an attempt by the defendant to evade prosecution, which is relevant on the issue of self-defense as well as on the intent of the defendant in killing the victim. *See State v. Braggs,* 604 S.W.2d 883 (Tenn.Cr.App.1980).

■ The defendant was not entitled to introduce the evidence of the deceased's former wife concerning the deceased's health and their separation. This evidence, even though the defendant claimed the deceased used him as an instrument of suicide, had no relevancy to prove the existence or non-existence of any fact at issue in this case. *See State v. Banks,* 564 S.W.2d 947 (Tenn.1978).

■ The defendant was not entitled to have the jury instructed on the defense of temporary insanity as he insists. There simply is no evidence in this case to support a theory of insanity, temporary or otherwise. The only evidence which could remotely be associated with this claim is the statement made by the defendant, "I just got mad, went crazy," and a statement by the man who helped the defendant that when the defendant said he had killed a man, "I just thought he was crazy."

These statements, in the absence of other proof, were not sufficient to raise a defense of insanity and require an instruction thereon.

The defendant contends that statements made by him to officers about the killing were inadmissible because the officers failed to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The statements introduced were made on June 30, 1983, at the time of the defendant's arrest, and on June 30, 1983, some two hours after the arrest, and on July 6, 1983.

When the officers first discovered the body in the trunk of the car, they immediately handcuffed the defendant and the man who was helping him to dispose of the body. One of the officers orally advised the defendant of his rights. The defendant contends the advice was inadequate because it was not broad enough to encompass all of the *Miranda* warnings.

▇ The testimony of the officer shows the advice given was sufficient to satisfy the *Miranda* rule, and the finding of the trial judge to this effect is supported by the evidence.

▇ Furthermore, the statements made by the defendant at the time of his arrest were statements which the defendant volunteered without questioning by the officers.

▇ An officer is not required to give a verbatim recitation of the *Miranda* warnings to avoid the pollution of voluntary statements made by an accused during questioning. *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). Thus, the advice given substantially complied with the advice of rights rule.

▇ Based on this and the fact that spontaneous statements made by an accused are admissible even in the absence of any warning, *State v. Croscup*, 604 S.W.2d 69 (Tenn.Cr.App.1980), the statements made at the time of the arrest were admissible.

▇ At the station house, officers commenced an interview of the defendant, and they attempted to advise him of his rights. The defendant interrupted the officers and told them he understood his rights. The advice given at this interrogation did not completely encompass all the advice mandated by *Miranda*. However, the defendant had been given the warnings only two hours earlier. In such a case, subsequent statements made during interrogation may be admitted without the necessity of again giving the *Miranda* warnings. *Reaves v. State*, 523 S.W.2d 218 (Tenn.Cr.App.1975).

At the time of the interrogation on July 6, 1983, the officers conducting the interrogation were investigating a case which was unrelated to the murder charge. The record shows they advised the defendant of the nature of their investigation and that they advised him of his rights under *Miranda*. The defendant waived his rights and agreed to talk to the officers. In the course of this conversation, the defendant, without interrogation on the subject, commenced to talk about this case.

▇ At the time of this interrogation, the officers were not aware an attorney had been appointed to represent the defendant. The defendant did not ask that the attorney be present or indicate any reluctance to talk to the officers. In such situations the statements of an accused are admissible into evidence. *See Scharff v. State*, 551 S.W.2d 671 (Tenn.1977).

When the defendant testified, evidence of a previous conviction was shown which touched upon his credibility. The defendant says the trial judge should have instructed the jury, at the time this was introduced, on the limited purpose of such evidence.

▇ The trial judge properly instructed the jury, in the general instructions, on how they were to consider this evidence. The defendant is not entitled to a new trial on the basis of this delay.

The defendant says he cannot be convicted of using a firearm in the commission of a felony and of murder in the second de-

gree. He contends that the use of a firearm can be considered by the jury on finding malice to support the murder conviction and is thus an enhancing factor under the statute defining murder in the second degree.

■ We do not agree with the defendant's contention in this regard. T.C.A. § 39–2–212 does not contain any enhancement factors for second degree murder. This being so, a conviction under T.C.A. § 39–6–1710 was proper. *State v. Hudson,* 562 S.W.2d 416 (Tenn.1978).

The defendant says the trial court erroneously found the defendant was an especially aggravated offender on a finding that the defendant was on probation when this offense was committed. This finding was based upon hearsay evidence.

Well before the sentencing hearing, the state gave notice they would rely upon the previous conviction and the fact that the defendant was on probation therefrom at the time this crime was committed. On direct examination in the guilt phase, the defendant admitted that he had pled guilty to the previous offense.

The state introduced a copy of this conviction, which was certified by a deputy clerk of the 18th Judicial Circuit of Pittsburg County, Oklahoma.

The defendant claims this was not a sufficient certification of the record and that the testimony of the probation officer who talked with a clerk in Oklahoma about the matter was hearsay, and he further says there is no showing the defendant had counsel at the time of the Oklahoma conviction.

Under T.C.A. § 40–35–209(b) reliable hearsay may be introduced to show previous convictions provided the opposing party has a fair opportunity to rebut any hearsay admitted at the sentencing hearing.

■ There is nothing in this record to indicate the defendant would have been denied an opportunity to rebut this evidence if he wished to do so. The defendant did not deny the truth of the matters shown by the evidence; he merely relied upon his objection and nothing more. At the hearing, the defendant did not raise an objection to the evidence on the basis of lack of counsel at the time of the Oklahoma conviction. He may not do so now.

The trial court's ruling was based upon the Oklahoma conviction and not upon other matters detrimental to the defendant and not contained in the notice to seek enhanced punishment.

We find no merit to the defendant's assignment on the matter of finding the defendant to be a Range II offender.

WALKER, P.J., and DUNCAN, J., concur.