IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2005

## STATE OF TENNESSEE v. MICHAEL CARNELL JONES

**Appeal from the Criminal Court for Hamilton County**
**No. 247545 & 247645    Rebecca Stern, Judge**

_____

**No. E2004-02919-CCA-R3-CD - Filed October 13, 2005**

_____

The appellant, Michael Carnell Jones, appeals from the trial court's revocation of his community corrections sentence. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and ALAN E. GLENN, JJ., joined.

Ardena J. Garth, District Public Defender and Donna Robinson Miller, Assistant District Public Defender, for the appellant, Michael Carnell Jones.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Bill Cox, District Attorney General; and Bates Bryan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The appellant was indicted in January of 2004 by the Hamilton County Grand Jury on two counts of burglary of a business and two counts of theft of property under $500. The appellant pled guilty. As a result of the plea agreement, the appellant received a two-year sentence for each burglary conviction and an eleven month, twenty-nine day sentence for each theft conviction. The burglary convictions were ordered to run consecutively to each other and concurrently to the theft convictions, for a total effective sentence of four years. The trial court ordered the appellant to serve the sentence on intensive probation. The trial court also ordered the appellant to be evaluated by the CADAS Alcohol and Drug Treatment Center and follow its recommendations for one year.

On August 16, 2004, the appellant's probation was revoked for failure to comply with the conditions of probation. As a result, the appellant was placed on community corrections.

On September 7, 2004, the trial court entered an "Order for Removal From Community Corrections Pending Hearing." The order alleged that the appellant left house arrest several times without permission. At a hearing held on November 8, 2004, the trial court heard the testimony of the appellant and Sharon Davis, a community corrections officer. Ms. Davis testified that the appellant was placed on electronic monitoring in the Community Corrections Program on August 18, 2004. She explained that the electronic monitoring device was checked each day by a supervisor. Beginning August 20, 2004, over a six-day period, the appellant left his residence and returned nine times without permission. Ms. Davis specified that the records indicated that the appellant left the residence three times each day on August 20, 21, and 25. After the appellant left the residence for the third time on August 25, a monitor called the house and no one answered the telephone.[1] After making a second call, the monitor was informed that the appellant left the house to purchase cigarettes. The appellant later spoke with the monitor and claimed that he had not left the residence. According to records, the appellant left the residence once more after being told by the monitor to remain at home.

Ms. Davis admitted on cross-examination that she was not the actual supervisor assigned to monitor the appellant and that the appellant claimed that he was going to work when he left the residence without permission. However, Ms. Davis received information from the appellant's probation officer that indicated that the appellant had not been going to work.

The appellant testified that he was going to work at the "Davis Home" on Duncan Street, located approximately forty to forty-five minutes from his home each time he left the residence without permission. The appellant admitted that he had originally been placed on probation, which was later revoked. The appellant also admitted that he was only in the community corrections program for three days before he began breaking the rules.

At the conclusion of the hearing, the trial court revoked the appellant's community corrections sentence and gave the appellant credit for time served in the program. The trial court determined that:

> [The appellant] was given this kind of extraordinary chance and you would expect him to be perfect on it given what he knows about how things work but he wasn't. On three different occasions he left the arrest house several times, sometimes for a few minutes, sometimes for a few hours it appears without permission.
>
> I just don't believe - - he has been given every chance and every alternative we can think of and I just don't think he is ever going to comply with the rules. He

---

[1]Counsel for the appellant objected to the testimony of Ms. Davis as hearsay. The trial court overruled the objection, determining that the information was "reliable hearsay" under Tennessee Code Annotated section 40-35-209(b) because the monitor was "calling his [the appellant's] home and asking him [one of the other residents] and they know who he is."

certainly is not going to go from Community Corrections back down to something less as a reward for violating.

The appellant filed a timely notice of appeal. On appeal, he claims that the trial court abused its discretion in revoking his community corrections sentence.

Analysis

On appeal, the appellant argues that the trial court erred in revoking his community corrections sentence because "the record does not contain sufficient admissible evidence to support revocation" of the sentence. Specifically, the appellant contends that Ms. Davis' testimony was not sufficient because she did not actually supervise the appellant during his community corrections sentence and that her testimony was hearsay. The State argues that the record supports the trial court's judgment.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310 & -311. After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two (2) years. See Tenn. Code Ann. §§ 40-35-308(c) & -311(e); State v. Hunter, 1 S.W.3d 643, 647-48 (Tenn. 1999).

The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. Id. The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). Further, "[i]t is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996).

A trial court has statutory authority to admit trustworthy and probative evidence, including hearsay, for sentencing purposes. Tenn. Code Ann. § 40-35-209(b); State v. Flynn, 675 S.W.2d 494 (Tenn. Crim. App. 1984); State v. Chambless, 682 S.W.2d 227 (Tenn. Crim. App. 1984). "Reliable hearsay" is admissible in a probation revocation hearing so long as the opposing party has a fair opportunity to rebut the evidence. Tenn. Code Ann. § 40-35-209(b). The Sentencing Act provides, however, that no evidence secured in violation of the constitution of the United States or of Tennessee may be admitted. Tenn. Code Ann. § 40-35-209(b).

The Tennessee Constitution, Article I, Section 9, and the United States Constitution, Sixth Amendment, prohibit proof of an essential element of a crime in a criminal prosecution by the admission of evidence that violates the right to confront and cross-examine adverse witnesses. State v. Henderson, 554 S.W.2d 117, 122 (Tenn. 1977); Pointer v. Texas, 380 U.S. 400, 403 (Tenn. 1965). However, since the issue in a probation revocation proceeding is not the guilt or innocence of the defendant, the right to confront and cross-examine adverse witnesses is not absolute and may be relaxed under certain circumstances. Both the Tennessee Supreme Court and the United States Supreme Court have recognized that "the full panoply of rights due a defendant" in criminal prosecutions do not apply to parole revocations. See Black v. Romano, 471 U.S. 606, 613 (1985) (stating that "the flexible, informal nature of the revocation hearing, . . . does not require the full panoply of procedural safeguards associated with criminal trial"); Bledsoe v. State, 387 S.W.2d 811, 814 (1965) (stating that "the defendant [in a probation revocation hearing] is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime"). However, since a probationer's conditional freedom from incarceration is at risk, he must be afforded due process in the revocation proceeding.

The United States Supreme Court set forth the minimum requirements of due process in probation proceedings in Gagnon v. Scarpelli, 411 U.S. 778 (1973). Those requirements include a conditional right to confront and cross-examine adverse witnesses. The Court stated:

> [There must be] preliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. Morrissey v. Brewer, 408 U.S. 471, 487, 92 S. Ct. 2593, 2603, 33 L. Ed. 2d 484 (1972). The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements:
>
> > (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole.

Gagnon v. Scarpelli, 411 U.S. at 786 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). This Court has also held that a defendant may not be subjected to a revocation upon evidence he had no

opportunity to hear, test by cross-examination or refute by contrary evidence. See Stamps v. State, 614 S.W.2d 71, 74 (Tenn. Crim. App. 1980). The guarantee to confront and cross-examine adverse witnesses clearly establishes that some right to confrontation exists in revocation hearings, but the qualifying "good cause" language reflects the flexibility that marks probation revocation proceedings and suggests that the confrontation requirement will be relaxed in certain circumstances. See State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993).

The record in the case herein shows that the proof in this case did not meet the minimum confrontation requirements of Gagnon. There was no specific finding by the trial court of "good cause" that would justify the denial of the appellant's right to confront and cross-examine an adverse witness, the monitor who supervised his house arrest. The appellant's objection to the admission of the testimony was denied by the trial court without comment save for the finding that the trial court found the testimony to be reliable hearsay. We agree with the trial court's assessment of Ms. Davis's testimony regarding the telephone calls placed to the residence in order to ascertain the whereabouts of the appellant as hearsay. See Tenn. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). However, we determine that in addition to the failure of the trial court to make a specific finding of good cause, the record would not support any such finding. The record is silent as to why the monitor who supervised the appellant was not called as a witness. Therefore, we determine that the trial court committed error because it failed to include a finding of good cause such that would have allowed the testimony despite the appellant's inability to cross-examine the declarant. Despite the absence of a finding of good cause, and the absence of proof on which such a finding could be based, the evidence establishes that the testimony was reliable. The basis for the revocation of probation were the appellant's numerous trips outside the residence without permission. The appellant himself confirmed that he left the residence multiple times and that he began violating the rules after being in the program for merely three days. Thus, the appellant never disputed the accuracy of Ms. Davis' testimony. He merely maintained that he should not be held culpable for his actions because his reasons for leaving the residence were legitimate. Despite the error of the trial court in admitting the testimony in the absence of a finding of good cause, we cannot conclude that the trial court abused its discretion in revoking the appellant's community corrections sentence.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-5-