IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

## STATE OF TENNESSEE v. BARBARA NICOLE NAPPER

**Appeal from the Criminal Court for Sumner County**
**No. 813-2016     Dee David Gay, Judge**

_____

### No. M2019-00623-CCA-R3-CD

_____

Barbara Nicole Napper, Defendant, was indicted for two counts of selling heroin in a school zone. She pled guilty to two reduced charges of selling heroin without the school-zone enhancement. She was sentenced to ten years for each conviction, to be served consecutively to each other. The sentences were suspended to community corrections. Multiple violation warrants were filed after Defendant tested positive for drugs. Prior to the disposition of the alleged violations, Defendant was indicted for introducing heroin into a penal facility. The State filed a motion seeking resentencing on Defendant's original sentence of twenty years. After a hearing on the violations, the trial court revoked Defendant's community corrections sentence and increased the sentence on each underlying offense by two years, for a total effective sentence of twenty-four years. Defendant timely appeals the revocation of her community corrections sentence and the trial court's decision to increase her underlying sentence. After a review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Lauren Wills (at trial and on appeal), Nashville, Tennessee; and Erika Porter (at trial), Gallatin, Tennessee for the appellant, Barbara Nicole Napper.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Ray Whitley, District Attorney General; and Lytle Anthony Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was charged with two counts of selling heroin in a school zone. Neither the indictments nor the transcript from the guilty plea hearing appear in the technical record, but the judgment forms indicate that Defendant pled guilty to two counts of the reduced charge of selling heroin without the drug free school zone enhancement. The judgment forms list the date of the offenses as October 12, 2016. The judgment forms were entered on October 5, 2017, sentencing Defendant to ten years in incarceration on each count, to be served consecutively to each other, suspended to community corrections. The special conditions box for Count 1 indicated that Defendant was "[t]o be released from jail on 10-17-2017 @ 7:00 a.m. to report to the Next Door program by 9:30 a.m.; supervised by community corrections." Defendant received jail credit from "10/26/2016 to 03/30/2017" on Count 1 and was sentenced to "9 years 6 months 24 days" on community corrections. The special conditions box for Count 2 contained the following: "[s]ee [C]ount 1" and indicated that Defendant was sentenced to "10 years" on community corrections.

On January 18, 2018, a warrant was issued for a violation of community corrections. The affidavit accompanying the warrant indicated that Defendant tested positive for heroin on January 4, 2018 and that the result was confirmed by Aegis Laboratories. On February 8, 2018, an amended warrant was filed indicating that Defendant signed a voluntary admission for the use of Xanax, heroin, marijuana, and trazadone. The warrant indicated that there was "no bond." On April 3, 2018, another amended warrant was filed alleging that Defendant tested positive for heroin on March 16 and that the result had been confirmed by Aegis Laboratories. Again, the warrant indicated that there was "no bond." On June 5, 2018, another warrant was filed alleging that Defendant was indicted by the Sumner County Grand Jury for the offenses of introduction of contraband into a penal facility and possession of heroin on May 25, 2018. Again, the warrant indicated no bond for Defendant. In November of 2018, the State filed a motion seeking to resentence Defendant on her original heroin convictions on the basis that she violated the terms of her community corrections sentence.

On April 1, 2019, the trial court held a hearing on the violations. Jennifer Woodard, an employee with community corrections in Gallatin, was Defendant's supervisor. She explained that Defendant initially reported to Next Door for treatment but was unable to complete the program because of medical issues, including "swelling in her hands, . . . high blood pressure, heart issues" and prior brain surgery. Ms. Woodard learned that staff at Next Door took Defendant to Centennial Hospital shortly after her arrival. An unspecified amount of time later, Defendant was sent to Meharry Hospital. Defendant was transferred to supervision by community corrections when she did not complete Next Door. Ms. Woodard explained that Defendant "had surgeries that were actually scheduled at which time her hand was going to be amputated." Ms. Woodard

- 2 -

thought both of Defendant's hands were going to be amputated eventually and Defendant "had some serious anxiety about having those hands removed." Ms. Woodard had a "home visit" with Defendant on Halloween and "then she came in [to report] after that" meeting. Ms. Woodard noted that Defendant was at CAAPs[1] in August of 2009 but was released from the program to have brain surgery in February of 2010. Defendant actually completed Buffalo Valley treatment in October of 2015.

Ms. Woodard explained that she "tried putting [Defendant] in classes" to help her on the road to recovery. Defendant managed to attend medical appointments but doctors "would always prescribe her opiates." Defendant would "start taking the opiates and that would trigger a relapse for her." Community corrections tried "different treatment programs" such as Buffalo Valley but they, like Next Door, were also unable to keep Defendant because of her various medical conditions.

On January 4, 2018, Defendant had a positive heroin test. At that point, Ms. Woodard issued the first violation. However, Ms. Woodard still attempted to find a program that would help Defendant. Another violation warrant was taken out on February 8, 2018, after Defendant signed a voluntary admission to taking Xanax, heroin, marijuana, and trazodone. Next, on April 3, 2018, Defendant had another positive drug screen for heroin. Finally, Defendant was indicted by the Sumner County Grand Jury for introduction of contraband into a penal facility on May 25, 2018.

Ms. Woodard acknowledged that Defendant always kept in contact with her but that Defendant was prevented from completing treatment programs because of her underlying medical issues. Ms. Woodard opined that Defendant "would benefit from a long-term treatment program" but expressed concern about finding a treatment facility that would "keep her." Defendant had "always been honest" with Ms. Woodard, admitting that she had used drugs for a long time and "when she's prescribed medicines, it throws her back into the addiction and then she starts using heroin."

Sonya Troutt, the jail administrator at the Sumner County Jail, testified that Defendant came to the jail on April 15, 2018, at around 7:00 p.m. Defendant was "initially frisked or patted down" when she was taken into custody and later she was strip-searched "[p]rior to going into the pod." A body cavity search was not performed. Ms. Troutt was not aware of any contraband found on Defendant. Defendant was moved to cell 108 in 1B pod around 4:00 a.m.

At around 6:00 a.m. on April 16, Ms. Troutt she "started getting emergency medical assistance radio traffic coming from 1B, female pod." She responded to the call

---

[1] CAAP is not defined in the record.

and when she arrived at the cell there were already officers and medical staff on the scene. She saw a "female [lying] in the floor . . . in [what looked like] a puddle of water." Ms. Troutt and a nurse were instructed by one of the medical personnel to pull the file for this inmate who was having "seizure-like activity." The file indicated that the inmate had no history of seizure so Ms. Troutt asked the nurse to "take NARCAN back to the pod."

By the time Ms. Troutt and the nurse arrived back at the pod, medical staff had already administered NARCAN. First responders arrived on the scene and took the inmate to the hospital. Approximately five minutes after first responders left the scene, there was "another call [about an inmate] with similar symptoms." Ms. Troutt surmised that it was possible that drugs had gotten into the jail so she reported it to the chief deputy.

Ms. Troutt received a third call for emergency services on 1B pod. This inmate was "leaning on the block wall, very, very gray in color, lips had already turned blue." Medical staff started CPR; the inmate was taken to the hospital. There were a total of five female inmates transported to Sumner Regional Medical Center on the day of the incident. Defendant was taken to the hospital by jail personnel.

Ms. Troutt was instructed by an officer to "turn the ventilation system off going into [pod] 1B to try to prevent any type of possible contamination to spread in other areas . . . ." As a result of the incident, Ms. Troutt "had to decontaminate around 35 correctional officers, 74 female inmates, [and] four medical staff or nurses." Three officers were taken to the hospital.

Melissa Lachapelle, who was an inmate on the date of the incident, was assigned to cell 211 in 1B pod. Her cell was on lockdown prior to the incident because there was suspected contraband in the pod. Everyone in the cell was subject to a drug screen and all of the inmates in her cell passed the drug test.

Ms. Lachapelle explained that Defendant was brought to the jail early that morning and was "in [cell] 212 and the door was shut." Sometime that morning, the inmates in cell 212 "were beating on the door" trying to "get someone to pop it" open because one of the inmates "passed out." When the door to the cell was opened, inmates standing outside could see that one of the people in the cell was passed out. Emergency personnel were called. Eight inmates were pushed into cell 211, and the doors were shut. Defendant was in cell 211. There was a "bunch of commotion and [Defendant] wanted to get rid of something. Defendant wanted to flush a pack" that she "pulled" from her pants. Before Defendant tried to get rid of the "pack," "the others wanted to get some of it, wanted to do some of it, and that's when it started going around and each of the girls did

- 4 -

[it]." Ms. Lachapelle "assumed that it was heroin" and saw inmates "snort it," taking a "bump" by snorting "through a piece of paper." Pretty quickly, each one of the inmates that ingested it started "falling out."

Another inmate, Brittney Collins, testified that Defendant came in to the jail the morning of the incident. Ms. Collins was assigned to cell 211, next door to Defendant's cell. Ms. Collins was told by another inmate that Defendant had drugs. As a result of learning about the drugs, Ms. Collins went to Defendant's cell to talk to Defendant's cellmates. Defendant was not in the cell at the time. Eventually, Ms. Collins went back to her cell. She heard the door shut to cell 212 and "the next thing [she] kn[e]w [she] heard [one of the inmates], like yelling [another inmate's name], like slapping her face, trying to wake her up, and she was just yelling her name and stuff." Ms. Collins and her cellmate ran to the door of Defendant's cell. She could see an inmate passed out on the floor. Officers were notified over the intercom. When all of the emergency personnel arrived, everyone ended up in cell 211 and "that's when the drugs go - - came out."

Detective Lance Hampton of the Sumner County Sheriff's Department was one of the officers who responded to the scene. Detective Hampton instructed someone to shut off the ventilation system in case something airborne was causing the issue. Prior to his arrival, Ms. Troutt informed him that "all inmates were pointing at one person" as the perpetrator, Defendant. She was moved to a location "behind the sergeant's desk" and advised of her rights prior to his arrival. Defendant informed Detective Hampton that she was brought into the jail earlier that day and initially placed in cell 108 before being moved to cell 212. Defendant claimed that when she arrived in cell 212, one of the inmates was in the bathroom passed out with blue lips. Defendant yelled for help and splashed water on the inmate's face before another inmate started CPR. Defendant denied bringing contraband into the jail, but Detective Hampton interviewed six inmates who all "pointed the finger" at Defendant.

Brandon Clark, a detective with the Sumner County Sheriff's Office, was responsible for interviewing inmates that were taken to the hospital after the incident. Defendant was the "common thread" in his investigation, with all the inmates claiming that Defendant brought heroin into the jail.

At the conclusion of the sentencing hearing, the trial court specifically determined that Defendant violated the terms of her community corrections. The trial court considered defendant's behavior and prior criminal record and concluded that Defendant's "sentences should be increased" by two years on each conviction. The trial court gave Defendant jail credit for time spent in incarceration prior to the violation and ordered the sentences to be served consecutively, for a total effective sentence of twenty-

four years.  It is from the revocation of community corrections and increase in sentence that Defendant now appeals.

*Analysis*

Defendant argues on appeal that the trial court abused its discretion in determining that she violated her community corrections sentence and increasing her sentence. Specifically, Defendant complains that the trial court abused its discretion when it permitted hearsay testimony at the hearing, that the trial court erred by questioning witnesses at the hearing, and that the trial court improperly increased her sentence.  The State, on the other hand, argues that the trial court did not abuse its discretion because "ample" evidence existed to support the revocation of community corrections and increase in Defendant's sentence.  Moreover, the State posits that Defendant waived any claim with regard to the trial court's questioning of witnesses.

In this case, Defendant was on community corrections.  "The [c]ommunity [c]orrections [p]rogram was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of 'nonviolent felony offenders' in the state prison system." *State v. Dennis Karr*, No. E2014-01245-CCA-R3-CD, 2015 WL 1593635, at *4 (Tenn. Crim. App. Apr. 7, 2015) (citing T.C.A. § 40-36-104; *State v. Estep*, 854 S.W.2d 124, 126-27 (Tenn. Crim. App. 1992)), *no perm. app. filed*.  "While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance." *Id*. (citing T.C.A. § 40-36-106(e)(4)).

The procedures for revocation of probation and community corrections are similar, and the same legal principles apply. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). A trial court may "revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence." *Id*. at 82 (citing T.C.A. § 40-35-311); *see* T.C.A. § 40-36-106(e)(3)(B).  Proof of a violation "need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82.  On appeal, this Court will review a trial court's decision to revoke a community corrections sentence under an abuse of discretion standard of review. *Id*.  To find an abuse of discretion, the record must contain no substantial evidence to support the conclusion of the trial judge that a violation has occurred. *Id*.  In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  Once a trial court has found sufficient evidence of a violation, the trial court has

the authority to revoke the community corrections sentence.  T.C.A. § 40-36-106(e).
Then, the trial court has the option to "resentence the defendant to any appropriate
sentencing alternative, including incarceration, for any period of time up to the maximum
sentence provided for the offense committed, less any time actually served in any
community-based alternative to incarceration.  T.C.A. § 40-36-106(e)(4).  With this
framework in mind, we will examine each of Defendant's issues on appeal.

### A.  Evidentiary Issues

Defendant initially complains about several evidentiary issues at the sentencing
hearing, including that the trial court improperly allowed hearsay testimony and
improperly questioned witnesses.  With regard to hearsay, Defendant complains that
inmates were allowed to testify about what other inmates told them about Defendant
bringing heroin into the jail.  Defendant agrees that the trial court deemed the testimony
hearsay and ruled that the hearsay was admissible only for its effect on the hearer.
However, Defendant insists that the trial court. as the sole decision maker, could not have
differentiated between the effect on the hearer and the truth of the matter asserted.

Hearsay is defined as "a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of the matter
asserted." Tenn. R. Evid. 801(c).  In general, hearsay statements are inadmissible.  Tenn.
R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or otherwise
by law.").  A trial court has the statutory authority to admit trustworthy and probative
evidence, including hearsay, for sentencing purposes.  *State v. Flynn*, 675 S.W.2d 494,
498 (Tenn. Crim. App. 1984); *State v. Chambless*, 682 S.W.2d 227, 233 (Tenn. Crim.
App. 1984); T.C.A. § 40-35-209(b).  Reliable hearsay is admissible in a probation
revocation or sentencing hearing so long as the opposing party has a fair opportunity to
rebut the evidence.  T.C.A. § 40-35-209(b).  A statement introduced for its effect on the
listener is not hearsay.  *State v. Venable*, 606 S.W.2d 298, 301 (Tenn. Crim. App. 1980);
Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.01, at 8-23 (5th ed. 2005) ("[A]ny
time the statement is used to prove the hearer or reader's mental state upon hearing the
declaration, words repeated from the witness chair are not hearsay . . . because [the
statement] is not used to prove the truth of the matter asserted in the statement.").

At the hearing, during Detective Hampton's testimony, he explained that several
of the other inmates implicated Defendant as the perpetrator.  Counsel for Defendant
objected, but the trial court overruled the objection, determining that the testimony was
"consistent with everything that I've heard so far . . . ."  During Ms. Collins's testimony,
she explained that several other inmates told her that Defendant was the source of the
drugs in the jail.  Counsel for Defendant objected.  With regard to Ms. Collins's
testimony the trial court commented, "Well, it depends on how you look at it.  I'm the

one that's determining the truth and I'm going to consider it only as effect on her, and I've made the ruling. That will be overruled." Ms. Collins continued her testimony. She testified that "[one inmate] had talked to [a second inmate] and that [the second inmate] had told her that [Defendant] had drugs." The trial court commented that this was "double hearsay" and would only be admitted "on the effect of the hearer." Though Defendant complains "it is difficult . . . to see how the trial court, who is the sole decision maker in a revocation hearing, will differentiate the two," we find no abuse of discretion. The trial court admitted reliable hearsay and commented that it would only be considered for its effect on the hearer. "[I]n a bench trial, the judge is presumed to follow the law and to not consider improper evidence." *State v. Donald Joseph Powell*, No. M2014-01132-CCA-R3-CD, 2015 WL 3563106, at *9 (Tenn. Crim. App. June 8, 2015), *no perm. app. filed*; s*ee also United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001) ("[W]e have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of this potentially prejudicial evidence."). The trial court did not abuse its discretion.

Defendant also argues that the trial court improperly questioned witnesses during the sentencing hearing, citing Rule 614(b) of the Tennessee Rules of Evidence. Rule 614(b) allows a trial court to question witnesses "[s]o long as the inquiry is impartial . . . to either clarify a point or to supply any omission." *State v. Schiefelbein*, 230 S.W.3d 88, 117 (Tenn. Crim. App. 2007). "The aim of this rule is to avoid giving 'the jury any impression as to [the judge's] feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury.'" *Id.* Rule 614(c) specifically requires a party to make an objection to the court's questioning during the course of the trial court's interrogation "or at the next available opportunity when the jury is not present." Tenn. R. Evid. 614(c); *Schiefelbein*, 230 S.W.3d at 118. Here, there was no jury. Moreover, Defendant failed to object to any of the questions asked by the trial court. This issue is waived.

*Resentencing*

Finally, Defendant complains that the trial court's decision to increase her sentence was excessive and not in line with statutory principles. Specifically, Defendant argues that the trial court improperly enhanced the sentence, without adequate proof in the record that the offense was committed on school grounds, failed to consider mitigating factors, and ignored her amenability to rehabilitation. The State disagrees.

Revocation of a community corrections sentence does not require a trial court to hold a new sentencing hearing unless the trial court imposes a new sentence. *State v. Samuels*, 44 S.W.3d 489, 493-94 (Tenn. 2001); *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998); *State v. Willy J. Hall*, No. E2014-01156-CCA-R3-CD, 2015 WL

2258008, at *3 (Tenn. Crim. App. May 13, 2015) (noting that "[w]hen the trial court does not alter the length, terms, or conditions of the sentence imposed, the court is not required to hold a sentencing hearing), *no perm. app. filed*.

Here, the trial court held a hearing on the revocation and considered sentencing principles in fashioning a new sentence. At the conclusion of the sentencing hearing, the trial court specifically determined that Defendant violated the terms of her probation by having three positive drug screens while on probation. The trial court took Defendant's prior criminal convictions into account as well as her previous inability to complete a probationary sentence. The trial court commented on Defendant's continued use of drugs despite her convictions and the fact that her original convictions stemmed from her attempt to sell drugs in a drug free school zone. The trial court informed Defendant that nothing would change for her until she "change[d her] heart." The trial court determined that the sentence was "justly deserved" in relation to the seriousness of the offense, commenting that "[s]elling heroin in a school zone, [was] probably one of the most serious offenses" and that as a society we were "losing the war." Defendant complains that the trial court improperly enhanced her sentence on the basis that it was committed in a school zone despite lack of proof in the record. Defendant is correct that there is no direct proof in the record that the original offenses occurred in a school zone. However, even if the trial court improperly applied this factor to enhance Defendant's sentence, any error is harmless. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed." *Bise*, 380 S.W.3d at 706. There was substantial evidence that Defendant repeatedly continued to use drugs despite being on community corrections. There were multiple violation warrants filed alleging additional drug use before Defendant was indicted for bringing drugs into the jail. Defendant admitted to at least one of these violations yet Defendant continued to insist that she is a good candidate for rehabilitation. The trial court disagreed and informed Defendant that she "became the monster" with her drug use in addition to her four prior felony and 16 prior misdemeanor convictions. The trial court concluded that Defendant's "sentences should be increased. The 10 years will go to 12 years based on what I've stated going over the sentencing requirements." Defendant received jail credit on Count 1 from "10/26/2016 to 03/30/2017"; "10/17/2017 to 01/18/2018"; "02/18/2018 to 02/16/2018"; and "04/15/2018 to 04/01/2019." The sentences were ordered to be run consecutively, for a total effective sentence of twenty-four years, sentences that are within the range for a Range I, standard offender convicted of Class B felonies. T.C.A. § 40-35-112(a)(2). In our view, the trial court did not abuse its discretion in increasing Defendant's sentence and ordering Defendant to serve the balance of her sentence in confinement. Defendant is not entitled to relief on this issue.

_____
TIMOTHY L. EASTER, JUDGE

- 9 -