IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2024 Session

**STATE OF TENNESSEE v. JAYSON ISIAH BOOKER**

**Appeal from the Criminal Court for Knox County**
**No. 119111    Hector Sanchez, Judge**

_____

**No. E2023-00435-CCA-R3-CD**

_____

In 2021, the Defendant, Jayson Isiah Booker, pleaded guilty to possession with intent to sell and/or deliver marijuana, a Class E felony, and the trial court imposed an agreed upon sentence of three years suspended to supervised probation.  In November 2022, the trial court issued a probation violation warrant, alleging that the Defendant had been arrested for new felony offenses.  After a hearing, the trial court found that the Defendant had violated his probation based on these arrests.  The trial court ordered the Defendant to serve one year in confinement before returning to supervised probation.  On appeal, the Defendant asserts that the trial court erred by: (1) admitting unreliable hearsay during the revocation hearing; (2) revoking his probation sentence; and (3) ordering him to serve one year in confinement.  After a thorough review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW WILSON, JJ., joined.

Mary J. Newton, Knoxville, Tennessee, for the appellant, Jayson Isiah Booker.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Kenneth Irvine, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's arrests following the trial court's grant of supervised probation.  On June 22, 2021, the Defendant pleaded guilty to possession with intent to sell and/or deliver marijuana, a Class E felony, and the trial court imposed an

agreed-upon sentence of three years suspended to supervised probation. On February 17, 2022, the trial court issued a violation of probation warrant, alleging that the Defendant had received a misdemeanor citation for Simple Possession/Casual Exchange. After a hearing, the trial court revoked the Defendant's probation, ordered him to serve thirty days in confinement and then return to supervised probation.

On November 16, 2022, the trial court issued a second violation of probation warrant, alleging that the Defendant had been arrested for felony possession of a Schedule I drug, felony possession of a Schedule IV drug, felony possession of a Schedule V drug, possession of drug paraphernalia, possession of a firearm with the intent to go armed during the commission of a dangerous felony, and possession of a weapon by a felon previously convicted of a felony drug offense.

At the January 25, 2023 probation revocation hearing, the parties presented the following evidence in support of the probation officer's allegations that the Defendant had violated the terms of probation by being arrested for new offenses. On April 1, 2019, Knox County Sheriff's Office ("KCSO") Detective Kristian Pickett executed a narcotic-related search warrant on OYO Hotel room 112. Although, the hotel room was not registered in the Defendant's name, the Defendant told Detective Pickett that he and his two co-defendants had recently moved from another hotel room in the OYO Hotel to room 112. The co-defendants, speaking separately with Detective Pickett, both confirmed that the three men stayed in room 112. Detective Pickett never saw any of the defendants inside room 112. He explained that the three men had been detained in the parking lot when he arrived.

Before entering room 112, Detective Pickett could smell a "very strong odor" of marijuana emanating from the room. Once inside room 112, Detective Pickett found a backpack in the bathtub with marijuana and approximately $97,265 in cash. Also in the bathtub was a white trash bag with 4.1 pounds of what Detective Pickett suspected was marijuana. Law enforcement officers also found digital scales, an additional 2.5 pounds of marijuana, packaging for marijuana, a stolen firearm, five mushroom bars, and a bottle or two of promethazine.

At the hotel, Detective Pickett spoke to Ms. Norris, the person who stayed in the room next to the Defendant's room. She told Detective Pickett that the Defendant "stay[ed]" in room 112 and that the smell of marijuana in her room was "extremely strong." Detective Pickett entered Ms. Norris's room and confirmed that the odor from room 112 was so strong that it permeated the room next to it.

After hearing this evidence, the trial court stated that its consideration was "two-prong" where the court would first determine whether or not the Defendant violated the

conditions of probation sentence and, if so, the appropriate consequence for the conduct. The trial court then entertained arguments from both parties about whether the Defendant violated the terms of his probation sentence. The State argued that the Defendant admitted to sharing the room with his co-defendants and that the significant amount of drugs and money found in the room supported the conclusion that the Defendant had possessed drugs in violation of his probation sentence. The State also noted that the underlying offense for which the trial court had granted a probation sentence was a drug offense. The Defendant argued that there was insufficient proof that he possessed drugs because the State had not established a connection between him and room 112.

The trial court considered the facts presented, noting that the Defendant admitted to staying in the room and Ms. Norris's statement that the Defendant resided in the neighboring room. Detective Pickett smelled the strong odor of marijuana at the door to room 112, and the presence of marijuana was confirmed during a search of the room revealing approximately ten pounds of marijuana, drug paraphernalia, drug packaging, and a large sum of cash. The trial court found, by a preponderance of the evidence, that the Defendant had violated a condition of his probation sentence requiring him to comply with the laws of the State of Tennessee because the possession of a felony amount of illegal drugs was a violation of Tennessee law. The trial court took the matter of the appropriate consequence under advisement and continued the hearing until February 22, 2023.

On February 22, 2023, the trial court made the following findings as to the appropriate consequence for the violation:

> This is a case that presents some serious concern for the Court. [The Defendant], although he wasn't apprehended in the room with the firearm and I believe upwards of ten pounds of marijuana and upwards of a hundred thousand dollars in United State's currency, there is -- there was sufficient proof at the hearing for the Court to find by a preponderance of the evidence that he had been seen in that room and whether it's association or whether he was involved in the trafficking of the controlled substances, what the fact of the matter remains is that he was on probation for marijuana and put himself in the predicament where he's involved in the identical conduct.

The trial court ordered the Defendant to serve one year in custody before returning to probation. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred by: (1) admitting unreliable hearsay during the revocation hearing; (2) revoking his probation sentence; and (3) ordering the Defendant to serve one year in confinement.

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the revocation on the record, appellate courts may conduct a *de novo* review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. No additional hearing is required for trial courts to determine the proper consequences for a revocation. *Id*. The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id*. at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2021)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." T.C.A. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id*. Notwithstanding subdivision (d)(1), the probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App., Dec. 16, 2022).

The following are classified as non-technical violations: a defendant's commission of a new felony or a new Class A misdemeanor, a zero-tolerance violation as defined by the department of correction community supervision matrix, absconding, or contacting the defendant's victim in violation of a condition of probation. T.C.A. § 40-35-311(e)(2). Once a trial court determines that a defendant has committed a non-technical violation of probation, the trial court may: (1) order confinement for some period of time; (2) cause

execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c); -310; -311(e)(2).

## A. Hearsay Evidence

The Defendant contends that Detective Pickett's testimony about what the co-defendants and Ms. Norris said were not reliable hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In general, hearsay statements are inadmissible. Tenn. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or otherwise by law."). However, "[s]trict rules of evidence do not apply at revocation hearings." *State v. Lewis*, 917 S.W.2d 251, 257 (Tenn. Crim. App. 1995). "Reliable hearsay has been held admissible in a probation revocation hearing so long as the defendant had a fair opportunity to rebut the evidence." *Id*. (citing *State v. Carney*, 752 S.W.2d 513 (Tenn. Crim. App. 1988)). In order for hearsay evidence to be deemed admissible, a trial court must find that "good cause" exists to justify the denial of the right to confront witnesses and that the hearsay evidence is reliable. *State v. Wade*, 863 S.W.2d 406, 409 (Tenn. 1993).

At the hearing, the Defendant objected to Detective Pickett's testimony about the two co-defendants' statements that the Defendant stayed in room 112. The State noted the relaxed rules of evidence in revocation hearings and then responded that the officer was testifying about the course of the investigation and the co-defendants' statement corroborated the Defendant's own admission that he resided in room 112. The trial court found that the hearsay was reliable and, therefore, admissible. Detective Pickett then testified about Ms. Norris's statement that the Defendant stayed in room 112. Once again, the Defendant objected and the trial court found the hearsay reliable.

The trial court made a specific finding that the co-defendants' and Ms. Norris's statements were a reliable form of hearsay. The trial court did not make a finding of "good cause" that would justify the absence of these witnesses at the probation revocation hearing. Some of our decisions conclude that "[a]lthough the trial court did not make a specific finding of 'good cause' for the admission hearsay testimony, such a finding was implicit in the trial court's words and findings." *See, e.g., State v. Jackson* No. W2022-01288-CCA-R3-CD, 2023 WL 2609643, at *4 (Tenn. Crim. App. Mar. 7, 2023), *no perm. app. filed*; *State v. Cherry*, No. W2015-01084-CCA-R3-CD, 2016 WL 520304, at *1 (Tenn. Crim. App. Nov. 3, 2015), *perm. app. denied* (Tenn. Feb. 8, 2016). Others have held that the defendant's confrontation rights were violated when the trial court admitted hearsay into evidence. *See, e.g., State v. Gribbons*, M2005-01992-CCA-R3-CD, 2006 WL

1916811, at \*5 (Tenn. Crim. App. June 14, 2006); *State v. Wiley*, No. E2004-01463-CCA-R3-CD, 2005 WL 1130222, at \*3 (Tenn. Crim. App. May 13, 2005) (reversing a revocation of probation based on hearsay evidence deemed reliable where the trial court "made no findings concerning the unavailability of the witness, nor did the court make a specific finding of good cause for the admission of the evidence"). We need not reach that issue in this case because we determine that any error, if it does exist, is harmless given the weight of the other evidence admitted.

Any error in the admission of the co-defendants' and Ms. Norris's statements was harmless beyond a reasonable doubt. *See* Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). It is well-established that a conviction need not be reversed due to an error of constitutional dimensions as long as the State demonstrates "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 368 U.S. 18, 24 (1967); *see also State v. Vaughan*, 144 S.W.3d 391, 409 (Tenn. Crim. App. 2003).

In this case, we conclude that the trial court did not abuse its discretion when it determined that the State had proven by a preponderance of the evidence that the Defendant violated his probation by acquiring felony charges, even without considering Ms. Norris's and the co-defendants' statements that the Defendant resided in room 112. Most significantly, the Defendant was present at the hotel, albeit in the parking lot, at the time of his arrest and admitted to Detective Pickett that he resided in room 112. The Defendant told Detective Pickett that he had recently moved from another room in the same hotel into room 112. Further, the Defendant was able to cross-examine Detective Pickett at the probation revocation hearing. We would also note that the challenged statements were included in the police report entered into evidence at the hearing.

The Defendant clearly stayed in room 112 where the police confiscated almost ten pounds of marijuana, almost $100,000 in cash, drug paraphernalia, a gun, and the odor of marijuana was so strong that it emanated outside room 112. There is sufficient evidence to prove by a preponderance of the evidence that the Defendant violated his probation, even without consideration of the co-defendants' and Ms. Norris's statements. Therefore, we conclude the outcome would not have been different in this case had the hearsay evidence been precluded. *See State v. Watson*, No. M2003-01814-CCA-R3-CD, 2004 WL 1562553 (Tenn. Crim. App. July 13, 2004), *perm. app. denied* (Tenn. Dec. 6, 2004); *State v. Cline*, No. M2000-01674-CCA-R3-CD, 2001 WL 1379877 (Tenn. Crim. App. Oct. 30, 2001), *no perm. app. filed* (both holding the trial court's failure to find "good cause" for denying the defendant's confrontation rights was error, but harmless error, in light of other evidence that supported revocation of probation).

## B. Violation of Probation

6

Next, the Defendant asserts that the trial court abused its discretion when it found the Defendant violated the terms of his probation sentence. While we recognize that a new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation, a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation. *See State v. Harkins*, 811 S.W.2d 79, 83 n. 3 (Tenn. 1991). A revocation on this basis requires the State to "produce evidence in the usual form of testimony" in order to establish the probationer's commission of another offense while on probation. *State v. Ellison*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App. May 29, 1998); *see State v. Chaney*, No. 01C01-9801-CC-00010, 1999 WL 97914, at *1 n. 2 (Tenn. Crim. App. Feb. 18, 1999).

A trial court has statutory authority to admit trustworthy and probative evidence, including hearsay, for sentencing purposes. T.C.A. § 40-35-209(b); *State v. Chambless*, 682 S.W.2d 227, 233 (Tenn. Crim. App. 1984); *State v. Flynn*, 675 S.W.2d 494, 498 (Tenn. Crim. App. 1984). "Reliable hearsay" is admissible in a probation revocation hearing so long as the opposing party has a fair opportunity to rebut the evidence. T.C.A. § 40-35-209(b). It is generally recognized that in order to prevail in a revocation proceeding based upon allegations of criminal misconduct, the State must show by a preponderance of the evidence that the defendant violated the law. *See State v. Byrd*, No. 01C01-9609-CC-00411, 1998 WL 216859, at *7 (Tenn. Crim. App. May 1, 1998). The State need not show a conviction for the new offense, but it should show by a preponderance of the evidence that the defendant violated the law. *See State v. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000), *perm. app. dismissed* (Tenn. Sept. 11, 2000).

In this case, there is substantial evidence in the record to support the trial court's finding that the Defendant violated the terms of his probation sentence by violating the laws of Tennessee. The State presented Detective Pickett's testimony who was at the scene during the execution of the search warrant on room 112. Detective Pickett testified about the strong odor of marijuana emanating from the hotel room while he still stood outside the door of the room. Inside room 112, law enforcement found almost ten pounds of marijuana, approximately $97,265 in cash, digital scales, items used for packaging marijuana, a stolen firearm, five mushroom bars, and a bottle or two of promethazine. By residing in this room with almost ten pounds of marijuana, the Defendant violated the criminal drug laws of the State of Tennessee, thereby violating the conditions of his probation sentence. There was substantial evidence in the record presented in the form of testimony from Detective Pickett to support the trial court's finding that the Defendant violated a condition of his probation. Accordingly, the trial court did not abuse its discretion and the Defendant is not entitled to relief on this issue.

7

## C. Consequence for Violation

Finally, the Defendant contends that the trial court erred when it ordered him to serve a year in confinement before returning to probation. The State responds that the record fully supports the trial court's decision to impose the one year incarceration as the consequence for his second probation violation involving drugs.

The underlying conviction in this case involves the felony possession of marijuana. For this conviction, the trial court granted probation. The Defendant did not complete a full year of probation before police found him in possession of marijuana. For this violation of the terms of his probation sentence, the trial court ordered the Defendant to serve thirty days before returning to probation. Once again, within the year, the Defendant was arrested for new offenses involving illegal drugs. In determining the consequence, the trial court noted the Defendant's repetitive involvement with illegal drugs despite being giving opportunity to do otherwise. The Defendant has, on more than one occasion, violated the terms of his probation sentence indicating his low potential for compliance with a probation sentence. Moreover, a defendant serving a probation sentence, "is not entitled to a second grant of probation." *State v. Harris*, No. M2015-01997-CCA-R3-CD, 2016 WL 3207723, at *3 (Tenn. Crim. App. June 1, 2016), *no perm. app. filed.*

Accordingly, we conclude that the trial court did not abuse its discretion by ordering the Defendant to serve one year in confinement before returning to probation. The Defendant is not entitled to relief.

## III. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE